May 6, 1998

Nos. 2--97--0705, 2--97--0706, 2--97--0707, cons.

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

PAMELA DIXON,          ) Appeal from the Circuit Court

) of Lake County.

Plaintiff-Appellant, )

)

v. ) No. 95--LM--4223

)

MERCURY FINANCE COMPANY OF       )

WISCONSIN, )

)

Defendant-Appellee )

) Honorable

(Rohr-Ville Motors, Inc., ) Emilio B. Santi,

Defendant). ) Judge, Presiding.

________________________________________________________________

REBECCA HOLLAND-WILSON, EUGENE ) Appeal from the Circuit Court 

WILLIAMS, LETITIA S. COOK, and ) of Lake County.

CYNTHIA SMOOTS, )

)

Plaintiffs-Appellants, ) No. 94--CH--781

)

v. )

)

MERCURY FINANCE COMPANY OF )

WISCONSIN; ROHR-VILLE MOTORS,   )

INC., d/b/a Saturn of Waukegan; )

and MERCURY FINANCE COMPANY OF )

ILLINOIS, ) Honorable

) Emilio B. Santi,

Defendants-Appellees. ) Judge, Presiding.

_________________________________________________________________

MERCURY FINANCE COMPANY OF ) Appeal from the Circuit Court

WISCONSIN, ) of Lake County.

)

Plaintiff and ) No. 95--LM--1848

Counterdefendant-Appellee, )

v. )

)

MIKE FRAZIER and WENDY FRAZIER, ) 

) 

Defendants and               ) Honorable

Counterplaintiffs-  ) Emilio B. Santi,

Appellants. ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

In this consolidated case, plaintiff Pamela Dixon, plaintiffs Rebecca Holland Wilson, Eugene Williams, Letitia Cook, and Cynthia Smoots (the Holland-Wilson plaintiffs), and counterplaintiffs Mike and Wendy Frazier ( all parties, collectively, plaintiffs), appeal the order of the circuit court of Lake County granting summary judgment in favor of defendants Mercury Finance Company of Wisconsin (MFC Wisconsin) and Mercury Finance Company of Illinois (MFC Illinois) (collectively, defendants).  Plaintiffs alleged that MFC Wisconsin violated the Sales Finance Agency Act (Act) (205 ILCS 660/1 
et
 
seq.
 (West 1994)) by failing to obtain a license and, thus, their motor vehicle retail installment contracts with MFC Wisconsin were void.  We affirm.

MFC Wisconsin is a sister company to MFC Illinois.  Both companies purchase or make loans secured by motor vehicle installment contracts.  At times relevant to this action, MFC Wisconsin was not licensed as a sales finance agency in Illinois under the Act.

In December 1992, MFC Wisconsin opened a branch office in Racine, Wisconsin, under the management of Kelly Hill, who was transferred from the Waukegan office of MFC Illinois.  Hill continued her business relationships with a number of Illinois dealerships while managing the Racine office.  During the time Hill managed MFC Wisconsin’s Racine office, it purchased more than 700 contracts from Illinois dealerships.

Plaintiffs alleged that they all purchased cars with financing from MFC Wisconsin.  Plaintiffs alleged that MFC Wisconsin originated the loan to purchase the car; MFC Wisconsin maintained that each dealership assigned it the financing contract.

In November 1994, the Holland-Wilson plaintiffs filed suit against MFC Wisconsin, alleging that MFC Wisconsin violated the Act by failing to obtain a sales finance agency license.  After plaintiffs filed their suit, the Illinois Department of Financial Institutions (Department) informed MFC Wisconsin that it was conducting business in Illinois as a sales finance agency and, as such, required an Illinois license.  After some negotiation, the Department sent MFC Wisconsin a cease and desist letter requiring it to become licensed in Illinois in order to continue to purchase Illinois contracts.  MFC Wisconsin disagreed that it needed an Illinois license but nevertheless agreed to stop purchasing Illinois contracts.

On February 1, 1995, the Holland-Wilson plaintiffs filed an  amended complaint.  Count I sought to set aside the contract as void; count II sought damages under section 16 of the Act (205 ILCS 660/16 (West 1994)).  MFC Wisconsin filed a motion  to dismiss the complaint.  The trial court denied the motion with respect to count I but dismissed count II, finding that the Holland-Wilson plaintiffs failed to identify any losses they suffered with sufficient particularity.

Effective July 11, 1995, MFC Wisconsin assigned all Illinois finance contracts to MFC Illinois.  The Holland-Wilson plaintiffs thereafter added MFC Illinois as a defendant to this action by virtue of the assignments.

The Holland-Wilson plaintiffs then filed a motion for class certification.  While the motion for class certification was pending, defendants filed a motion for summary judgment, which was denied.  The trial court directed the Holland-Wilson plaintiffs to prepare a motion for summary judgment before it would address the class certification motion.  Thereafter, the trial court concluded that there were no issues of material fact and that defendants were entitled to judgment as a matter of law.  The trial court held that plaintiffs’ financing contracts were voidable due to the Department’s intercession.  The trial court reasoned that the Department’s action of requiring MFC Wisconsin to assign its Illinois contracts to MFC Illinois ratified the financing contracts.  The Holland-Wilson plaintiffs filed an objection to the court’s ruling on the grounds that the trial court refused to rule on the class certification before the motion for summary judgment and because defendants had no pending motion for summary judgment before the court.  The trial court overruled the objections and entered judgment, dismissing the claims against defendants.  As the same issues were involved in the consolidated cases, the trial court also dismissed Dixon’s and the Fraziers’ actions against defendants.  Plaintiffs timely appeal.

Plaintiffs raise five issues on appeal, contending that the trial court erred by (1) concluding that the financing contracts provided by defendants were illegal but not void; (2) ruling that the Department’s actions ratified the financing contracts; (3)  granting summary judgment in favor of defendants where defendants had no pending motion for summary judgment; (4) refusing to hear plaintiffs’ motion for class certification and instead ordering plaintiffs to file a motion for summary judgment; and (5)  dismissing count II of the amended complaint for failing to allege a loss under the Act.

Before addressing the issues raised by plaintiff on appeal, we  briefly examine the standards under which we review the propriety of a grant of summary judgment.  Summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005 (West 1994); 
Leschinski v. Forest City Steel Erectors
, 243 Ill. App. 3d 124, 127 (1993).  In ruling on the motion, the court is required to construe all evidentiary material strictly against the movant and liberally in favor of the respondent.  
Pagano v. Occidental Chemical Corp.
, 257 Ill. App. 3d 905, 908 (1994).

A reviewing court reviews the propriety of an order granting summary judgment 
de
 
novo
 and “may affirm the decision on any ground in the record, regardless of whether the trial court relied on that ground or whether the court’s reasoning was correct.”  
Grot v. First Bank of Schaumburg
, 292 Ill. App. 3d 88, 93 (1997).  If, after reviewing the pleadings and evidentiary material before the trial court, the reviewing court determines that a material issue of fact exists or that the summary judgment was based on an erroneous interpretation of the law, then reversal is warranted.  
Pagano
, 257 Ill. App. 3d at 909.  

Plaintiffs first contend that the financing contracts were void and should be set aside.  Plaintiffs advance three reasons in support of their contention.  First, plaintiffs argue that the financing contracts were made in violation of the Act, a mandatory licensing statute, because MFC Wisconsin was not licensed under the Act.  According to plaintiffs, MFC Wisconsin was not an assignee of each plaintiff’s car loan, but rather, originated the loan to each plaintiff.  Plaintiffs contend that defendants acted as sales finance agencies by originating the loans.  Thus, according to plaintiffs, defendants’ violation of the Act renders the contracts void.  Second, plaintiffs argue that MFC Wisconsin’s promise to extend financing to each plaintiff constituted illegal consideration, thereby rendering the contracts void.  Third, plaintiffs assert that the financing contracts conflicted with Illinois public policy.

Plaintiffs’ arguments, however, overlook the statutory remedies available under the Act.  The Act provides that “[n]o person may engage in the business of a sales finance agency in this State without first obtaining a license as provided in this Act.”  205 ILCS 660/3 (West 1994).  Concerning violations, the Act provides that “[a]ny person who engages in business as a sales finance agency without the license required by this Act shall be guilty of a Class A misdemeanor.”  205 ILCS 660/15 (West 1994).  The Act’s damages provision states:

“An individual who sustains loss as a result of a sales finance agency’s violation of this Act may, in a civil action against the sales finance agency, recover damages, or may, in an action brought by the sales agency to collect an indebtedness arising out of a retail sales transaction, raise such damages by way of a counterclaim or offset.  In either such action, the court may allow as an additional part of the recovery, offset or counterclaim, penal damages in an amount not more than 25% of the principal amount of the retail contract, retail charge agreement, or evidence of indebtedness which is the subject of the action.”  205 ILCS 660/16 (West 1994).

The Act does not allow a plaintiff to declare a contract void; it only allows a plaintiff to recover damages for losses incurred due to a violation of the Act.  Here, plaintiffs have not alleged or demonstrated any losses arising from MFC Wisconsin’s failure to obtain an Illinois license.  Plaintiffs do not allege that they would have received a different or better deal had they obtained financing through an Illinois licensee.  Plaintiffs also do not offer evidence that MFC Wisconsin violated any of the other requirements of the Act.  This lack of harm is fatal to plaintiffs’ claims.

Indeed, we discern in the Act a balance between the competing public policies of oversight of consumer credit transactions and the freedom to contract.  The Act provides that “[n]o suspension, revocation or surrender of a license issued under this Act impairs or affects the obligation of any retail installment contract, retail charge agreement or evidence of indebtedness acquired previously thereto by the licensee.”  205 ILCS 660/10.3 (West 1994).  Similarly, section 13.70 of the Business Corporation Act of 1983 provides that the “failure of a foreign corporation to obtain a certificate of authority to transact business in this State does not impair the validity of any contract or act of the corporation.”  805 ILCS 5/13.70 (West 1994).  From these sections, we discern the legislature’s pragmatic approach to the realities of business in a large and integrated multi-state economy, balancing the competing policies of protecting the public and promoting the free flow of commerce.

In addition, we note that the Department acted to enforce the public policy of the State by requiring that MFC Wisconsin either obtain an Illinois license or assign the contracts to an Illinois licensee.  MFC Wisconsin has maintained throughout the course of this matter that it was not doing business in Illinois.  The Department’s forbearance from criminal prosecutions under section 15 of the Act reinforces MFC Wisconsin’s contention that it was at all times acting in good faith.  Pursuant to the Department’s action, MFC Wisconsin assigned the financing contracts to MFC Illinois, thereby losing the benefits of its bargains with plaintiffs.  We note plaintiffs do not allege that MFC Wisconsin acted in bad faith and did not tender their vehicles for return.  To strip MFC Wisconsin of its contracts and require it to pay for plaintiffs’ cars in the absence of specific and articulable harm to plaintiffs is excessively harsh.  Under the facts of this case, where the sales finance agency has apparently conducted business in good faith and where plaintiffs cannot demonstrate any harm arising from the sales finance agency’s failure to obtain a license, we see no reason to invalidate the contract based upon other grounds not specifically set forth in the Act.

We also find the authority cited by plaintiffs in support of their argument to be distinguishable.  Initially, we note that in the large majority of cases, the licensing statute was enacted in order to protect public health and safety.  In these cases, a violation of the licensing requirements could have a significant impact on public health or safety.  See, 
e.g.
, 
Kaplan v. Tabb Associates, Inc.
, 276 Ill. App. 3d 320 (1995) (architectural license); 
Ransburg v. Haase
, 224 Ill. App. 3d 681 (1992) (architectural license);
 
Tovar v. Paxton Community Memorial Hospital
, 29 Ill. App. 3d 218 (1975) (medical license); 
Broverman v. City of Taylorville
, 64 Ill. App. 3d 522 (1978) (pollution); 
E & B Marketing Enterprises, Inc. v. Ryan
, 209 Ill. App. 3d 626, 630 (1991) (physician fee splitting compromised patient’s interests); 
Klubeck v. Division Medical X-Ray, Inc.
, 108 Ill. App. 3d 630, 635 (1982) (public health compromised by indirect payment to medical service provider).  Here, by contrast, public health or safety is not endangered by MFC Wisconsin’s failure to obtain a license.  We also find plaintiffs’ remaining authority to be distinguishable.  See, 
e.g.
, 
Frankel v. Allied Mills, Inc.
, 369 Ill. 578 (1938) (licensing statute does not contain section to enforce contracts upon loss of license); 
Waterford Executive Group, Ltd. v. Clark/Bardes, Inc.
, 261 Ill. App. 3d 338 (1994) (same); 
White v. Chicago Title & Trust Co.
, 99 Ill. App. 3d 323 (1981) (same); 
American Buyers Club of Mt. Vernon, Illinois, Inc. v. Grayling
, 53 Ill. App. 3d 611, 616 (1977) (violation of substantive federal truth-in-lending requirements).

Plaintiffs also approach the problem from the viewpoint that part of the consideration for the transaction, namely MFC Wisconsin’s promise to provide them financing, is illegal in light of MFC Wisconsin’s failure to obtain a license under the Act.  According to plaintiffs, the illegal consideration renders the contract unenforceable.  We disagree.  The illegality in this situation stems from MFC Wisconsin’s failure to obtain a license, not from its extension of credit to plaintiffs.  See 205 ILCS 660/15 (West 1994).  Moreover, when informed of the fact that MFC Wisconsin was not licensed under the Act, the Department acted to vindicate the public interest by requiring MFC Wisconsin to assign all its Illinois contracts to an Illinois licensee.  MFC Wisconsin complied.  The Department sought no other sanctions against MFC Wisconsin.  Plaintiffs have provided no evidence that the financing agreement itself violated any laws or that the subject matter of the financing agreement or any other detail of the transaction was illegal.

Plaintiffs also contend that the transaction contravened public policy.  We reject this argument, as the Act itself in section 10.3 strikes a balance between public protection and the freedom to contract.  205 ILCS 660/10.3 (West 1994).  Moreover, the Department’s intervention vindicated the public policy.  As discussed previously, the Department required MFC Wisconsin to assign the Illinois contracts to an Illinois licensee.  This action protected the public interest, and, in the absence of any harm to plaintiffs, no further action on their behalf is necessary.

Next, plaintiffs argue that the trial court erred by determining that the Department’s intervention ratified the financing contracts.  As we have already decided the issue on the grounds discussed above, we need not consider plaintiffs’ argument in this regard.

Plaintiffs next argue that the trial court abused its discretion by refusing to rule on their motion to certify a class before it heard plaintiffs’ motion for summary judgment.  We disagree.  Section 2—802(a) of the Code of Civil Procedure provides that “[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained.”  735 ILCS 5/2—802(a) (West 1996).  “As soon as practicable” does not mean, however, that a court need delay ruling on a motion to dismiss until after it has ruled on the issue of class certification.  
Schlessinger v. Olsen
, 86 Ill. 2d 314, 320 (1981).  The 
Schlessinger
 court adopted the reasoning of the federal district court in 
Garcia v. Rush-Presbyterian-St.Luke’s Medical Center
, 80 F.R.D. 254, 260 (N.D. Ill. 1978), which, in ruling on a similar issue, stated:

“ 'Recent decisions *** have expressed a strong preference for early certification as required by the explicit language of [Fed. R. Civ. P. 23(c)(1)]. [Citations.]  It has been suggested that the rationale of these cases, if carried to a logical extreme, would require certification to precede even disposition of motions [to dismiss]. [Citation.] However, where, as here, defendants’ summary judgment motions allow the court to explore and define the proper range of judicial inquiry on the allegations of the complaint, disposition of those motions before certification is appropriate.' “ 
Schlessinger
, 86 Ill. 2d at 320.

In addition, the seventh circuit recently discussed a similar circumstance to the case at bar, stating,

“The bank elected to move for summary judgment before the district judge decided whether to certify the suit as a class action.  This is a recognized tactic, [citations] and does not seem to us improper.  It is true that [Fed. R. Civ. P. 23(c)(1)] requires certification as soon as practicable, which will usually be before the case is ripe for summary judgment. [Citations.] But 'usually' is not 'always,' and 'practicable' allows for wiggle room.  Class actions are expensive to defend.  One way to try to knock one off at low cost is to seek summary judgment before the suit is certified as a class action.  A decision that the claim of the named plaintiffs lacks merit ordinarily, though not invariably, [citations] *** disqualifies the named plaintiffs as proper class representatives.  The effect is to moot the question whether to certify the suit as a class action unless the lawyers for the class manage to find another representative.”  
Cowen v. Bank United of Texas, FSB
, 70 F.3d 937, 941 (7
th
 Cir. 1995).

We find the reasoning of these cases to be persuasive here as well.  In the case at bar, plaintiffs delayed moving for class certification until after defendants had made a number of motions, including at least one motion for summary judgment.  Although plaintiffs filed their motion for summary judgment at the trial court’s request, this fact does not invalidate the procedure used in this case, where the scope of the judicial inquiry on the issues had yet to be defined.  Moreover, even if we were to reverse the trial court, plaintiffs could still move to certify a class.  We discern no prejudice to plaintiffs arising from the trial court’s procedure in this case, and we find that there was no abuse of discretion.

Plaintiffs next argue that the trial court erred by granting summary judgment in favor of defendants because defendants had no pending motion for summary judgment before the trial court.  We disagree.  Plaintiffs had filed a motion for summary judgment, which was properly before the trial court. The denial of plaintiffs' motion was effectively a ruling in favor of defendants even though defendants had no pending motion for summary judgment.  
Magnus v. Lutheran General Health Care System
, 235 Ill. App. 3d 173, 184-85 (1992).

Plaintiffs’ final contention is that the trial court erroneously dismissed count II of their complaint for failing to sufficiently plead that plaintiffs had sustained a loss under section 16 of the Act (205 ILCS 660/16 (West 1994)).  We disagree.

Section 16 provides that ”[a]n individual who sustains loss as a result of a sales finance agency’s violation of this Act may, in a civil action against the sales finance agency, recover damages ***.”  205 ILCS 660/16 (West 1994).  Plaintiffs have alleged only that they paid principal and interest due under the void contract. As plaintiffs’ argument is based on obligations under a void contract, it necessarily fails in light of our earlier disposition of this issue.  In any event, we hold that the mere allegations of paying obligations owed on a void contract are insufficient as a matter of law to state a claim under the Act.

Plaintiffs cite  
Armstrong v. Edelson
, 718 F. Supp. 1372 (N.D. Ill. 1989), for the proposition that allegations of a sales finance agency’s violation of the Act sufficiently state a loss under the Act.  There, the plaintiffs alleged that a contractor induced them to enter into a home repair contract that was backdated and therefore could not be canceled.  The plaintiffs alleged that the contract required them to pay for home repair work that they never received or that was defectively performed.  The contract was assigned to a sales finance agency that was alleged to have violated the Act because it purchased the contract even though there was no description of the services that were to be provided.  The district court held that the plaintiffs stated a claim under the Act because of the uncertainty in the contract over what services the contractor was to perform.  
Armstrong
, 718 F. Supp. at 1378.  In the present case, by contrast, plaintiffs alleged that they received the cars for which they bargained and, in exchange, paid their obligations under the financing agreement.  Plaintiffs did not allege that the cars were defective, or that the financing agreements were illegal or unconscionable.  
Armstrong
 does not support plaintiffs’ argument.

We also find
 
Kedzie & 103
rd
 Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112 (1993), and
 
Automotive Material Co. v. American Standard Metal Products Corp.
, 232 Ill. App. 532 (1924), 
rev’d
, 327 Ill. 367 (1927), to be distinguishable because each dealt with obligations arising under contracts void for reasons of public policy.  As determined above, the contracts at issue in this case are not void and do not violate public policy.  Thus, we find that the trial court properly dismissed plaintiffs’ claim under section 16 of the Act (205 ILCS 660/16 (West 1994)).

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

GEIGER, P.J., and McLAREN, J., concur.