FIFTH DIVISION

                    March 29, 200 

No. 1-00-2557

ROBERT BRUEMMER, Indiv. and for a Class of Similarly Situated Persons,

Plaintiff-Appellant,

v.

COMPAQ COMPUTER CORPORATION,

Defendant-Appellee.

))))) ))))

))

Appeal from the

Circuit Court of

Cook County

Honorable

Stephen A. Schiller,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court:

On October 20, 1998, plaintiff, Robert Bruemmer, filed a class action complaint against the defendant, Compaq Computer Corporation, asserting consumer fraud and breach of contract causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act       (Consumer Fraud Act)
 (815 ILCS 505/1 
et
 
seq
. (West 1998)) and the Uniform Commercial Code (810 ILCS 5/1-101 
et
 
seq
. (West 1998)).  Plaintiff alleged that defendant failed to refund the purchase price of his computer, as provided in the warranty, after defendant was unable to repair the malfunctioning computer.  Plaintiff voluntarily withdrew and amended the complaint to include additional counts for violation of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act (Magnuson-Moss Warranty Act) (15 U.S.C. §2301 (1994)) and common law breach of contract.  After the suit was filed, defendant attempted to tender a refund to plaintiff for the purchase price of the computer;  however, plaintiff refused to accept it.  The trial court dismissed plaintiff's amended complaint and granted him leave to replead.  Following two attempts to replead, the trial court dismissed plaintiff's third amended class action complaint with prejudice as moot, and denied, in part, plaintiff's petition for attorney fees and costs.  Plaintiff now appeals.

On appeal, plaintiff argues that the trial court erred: (1) in striking plaintiff's class allegations from the complaints rather than dealing with the class issues on a motion for class certification; (2) in striking/dismissing plaintiff's count for a declaratory judgment; (3) in striking/dismissing plaintiff's count for violation of the Consumer Fraud Act; (4) in dismissing plaintiff's complaint as moot; and (5) in denying in part plaintiff's petition for attorney fees and costs.

For the following reasons, we affirm.

I.   BACKGROUND

In October of 1997 plaintiff purchased a new Pentium personal desktop computer from the defendant.  The computer was accompanied by a one-year limited warranty which provided:

"During the warranty period, Compaq will, at no additional charge, repair or replace defective parts with new parts or, at the option of Compaq, serviceable used parts that are equivalent or superior to new parts in performance***.If, after repeated efforts, Compaq is unable to restore the Product to good working order, you are entitled to a refund of the purchase price."

Shortly after installation, the computer began to malfunction.  The computer screen turned blue and displayed a "fatal exception error."  This type of malfunction is commonly known as a "crash."  Plaintiff's computer continued to experience the malfunction.  Plaintiff telephoned defendant's technical service department approximately a dozen times during the month that followed his computer purchase.  Although the technical representatives had plaintiff reconfigure settings and reinstall software, the malfunction persisted.

Toward the end of January 1998, defendant sent a technical representative out to repair plaintiff's computer.  The representative replaced the motherboard of the computer but the "crash" malfunction continued.  Defendant's repair technicians worked on plaintiff's computer three additional times over the following three months.  The technicians replaced the memory, the central processing unit and the motherboard for a second time; however, the problem persisted.    

Plaintiff spoke with Tim Rivali, defendant's customer service representative, in early April of 1998 and requested a refund of the purchase price of the computer pursuant to his warranty.  Plaintiff's complaint alleged that Rivali refused to provide plaintiff with a refund, stating simply "we are not going to give you a refund."  Plaintiff also requested a refund in June of 1998, which was again denied.

On October 20, 1998, plaintiff filed a class action complaint against defendant.  Originally, plaintiff sought to represent a class which included all Compaq purchasers who purchased defective computer hardware and for whom, after repeated efforts to restore the defective hardware to good working order, Compaq failed to comply with the warranty to refund the purchase price.  Plaintiff asserted causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1998))
 (count I) and the Uniform Commercial Code (810 ILCS 5/1-101 
et
 
seq
. (West 1998)),  for breach of express warranty (count II).  Plaintiff subsequently voluntarily withdrew the complaint and amended it to include causes of action for violation of the Magnuson-Moss Warranty Act (15 U.S.C. §2301 (1994)) 
(count III), and common law breach of contract (count IV).  Plaintiff changed the purported class he was representing to all purchasers of Compaq computers who received the limited warranty that he received.

On November 18, 1998, less than a month after plaintiff filed suit in this case, defendant attempted to tender a refund of the purchase price of the computer to plaintiff.  Plaintiff rejected this offer and chose to pursue this suit.

Defendant moved to strike the class action claims as well as counts I and II of the complaint.   The trial court granted defendant's motion and granted plaintiff 28 days to replead and file an amended complaint.  Plaintiff's proposed second amended complaint asserted causes of action for violation of the Magnuson-Moss Warranty Act (count I), common law breach of contract (count II), declaratory judgment (count III), and violation of the Consumer Fraud Act (count IV).  The trial court denied plaintiff's motion to file the proposed second amended complaint, holding that plaintiff had not stated a cause of action for declaratory judgment and finding the class and consumer fraud claims to be insufficient.  The court granted plaintiff leave to file another amended complaint.  Defendant, on August 4, 1999, again offered to refund plaintiff's purchase price.  Plaintiff rejected the offer.

Plaintiff filed a second amended complaint.  This complaint identified the class as all owners of Compaq's computers covered by Compaq's limited warranty that "[i]f, after repeated efforts, Compaq is unable to restore the Product to good working order, you are entitled to a refund of the purchase price."  Plaintiff additionally sought a declaration as to the meaning of the phrase "repeated efforts."  The defendant moved to strike with prejudice the class claims and counts III and IV of the second amended complaint.  The trial court struck plaintiff's declaratory judgment claim (count III), struck plaintiff's Consumer Fraud Act claim (count IV) with leave to replead, and held in abeyance its ruling on striking plaintiff's class allegations pending plaintiff's repleading of count IV. 

Plaintiff filed his third amended complaint on November 15, 1999.  Plaintiff's complaint added an allegation that plaintiff purchased the computer after comparing defendant's warranty to the warranties provided by other computer companies, based in material part on the specific term in defendant's warranty offering him a refund if defendant was unable to repair the computer after "repeated efforts."  The definition of the purported class remained the same.  The complaint additionally sought to establish a subclass of those class members who were refused a refund of the purchase price after defendant was unable to repair their computers after two or more attempts.  Defendant again moved to dismiss plaintiff's class, consumer fraud and declaratory judgment claims.  Defendant also moved to dismiss plaintiff's remaining individual claims on the ground that 
plaintiff's claims were moot because defendant had tendered all of the requested damages sought.  On March 21, 2000, the trial court granted defendant's motion and dismissed all of plaintiff's claims with prejudice.  The court waited to enter a final appealable order pending a determination of the attorney fees plaintiff was entitled to recover under the Magnuson-Moss Warranty Act.

Following the March 21 order, plaintiff filed a petition for attorney fees and costs pursuant to the Magnuson-Moss Warranty Act and the Consumer Fraud Act seeking approximately $38,900.  On April 18, 2000, defendant sent plaintiff's counsel a refund check for $869.99,  representing the purchase price of the computer.  Plaintiff cashed the check on April 26, 2000.  On June 28, 2000, the trial court awarded plaintiff $6,000 in attorney fees and his costs, and entered a final order dismissing plaintiff's complaint as moot pursuant to its March 21, 2000, ruling.

Plaintiff now timely appeals.

II.  ANALYSIS

A. Mootness

Defendant maintains that plaintiff's voluntary acceptance of defendant's tender renders this action moot.  Defendant additionally, or in the alternative, asserts that under the recent holdings in 
Hillenbrand v. Meyer Medical Group, S.C.
, 308 Ill. App. 3d 381, 720 N.E.2d 287 (1999), and 
Arriola v. Time Insurance Co.
, 323 Ill. App. 3d 138, 751 N.E.2d 221 (2001), the action was rendered moot when defendant first offered the tender, regardless of the fact that plaintiff refused to accept it.

We acknowledge first that defendant tendered a check for $869 to the plaintiff, which represented a refund of the purchase price of plaintiff's computer.  On April 26, 2000, plaintiff cashed that check.  The amount of the check represented the full damages plaintiff's action requested.
  In 
Yu v. International Business Machines Corp.
, 314 Ill. App. 3d 892, 732 N.E.2d 1173 (2000), plaintiff brought a class action against the sellers of computer software that allegedly was not "year-2000" compliant after learning that the computer required an expensive upgrade to make it compliant. Plaintiff demanded, and defendant performed, the requested upgrade free of charge after the class action suit was filed but before plaintiff moved for class certification.  The trial court dismissed the case as moot.  In affirming the trial court, this court stated that an issue is moot if no actual controversy exists or where events occur that make it impossible for the court to grant effectual relief.  
Yu v. International Business Machines Corp.
, 314 Ill. App. 3d at 898.  Once defendants tendered the requested relief to plaintiff and his computer was compliant, there was no longer a case or controversy.  "[O]nce plaintiff accepted this remedy, plaintiff was no longer an appropriate representative of the interests of the class."  
Yu v. International Business Machines Corp.
, 314 Ill. App. 3d at 898.  In the case at bar, as in 
Yu
, plaintiff's acceptance of defendant's check can be deemed to have nullified the existence of a case or controversy.

Plaintiff, however, maintains that cashing defendant's check was not intended as an act of settlement of his claims.  Plaintiff's endorsement on the check specifically stated "not an accord and satisfaction."  Even if we were to accept plaintiff's argument that this case was not settled when he accepted the tender, the trial court properly dismissed plaintiff's action.  

Defendant argues that its original tender on  November 18, 1998, mooted plaintiff's suit.  
In response, plaintiff maintains that he refused this original tender, which was offered by the defendant shortly after the class action suit was filed.  Plaintiff asserts that his motion for class certification was pending when he finally accepted the tender and, therefore, dismissal was improper.  Plaintiff's argument is almost identical to the argument presented by the plaintiff, and rejected by this court, in 
Hillenbrand
, 308 Ill. App. 3d 381, 720 N.E.2d 287.  In 
Hillenbrand
, this court dealt specifically with the issue of whether actual acceptance of the tender would affect the issue of mootness.  There we held that no controversy exists between parties when the defendant tenders the payment requested by the plaintiff, plus interest.  "The plaintiffs cannot perpetuate the controversy by merely refusing Meyer's tender."  
Hillenbrand
, 308 Ill. App. 3d at 389.

Plaintiff maintains that his class claims cannot be mooted by a defendant's tender of damages so long as the plaintiff has reasonably and timely pursued certification of the class.  Plaintiff argues that he was unable to accept the original tender because he was "cognizant of his fiduciary obligations to the putative class" and chose therefore, to pursue his class allegations.  Consequently, plaintiff argues, 
because he pursued class certification with reasonable diligence, 
Hillenbrand
 required the trial court to hear the motion for class certification prior to deciding whether the case was mooted by the tender.  

In ruling that the trial court's entry of summary judgment in favor of the defendant was premature, the court in 
Hillenbrand
 addressed a situation where the defendant's tender was made while the motion for class certification was pending.  The court noted that, as a general rule, a proper tender to the named plaintiffs prior to class certification mandates dismissal of the action.  
Hillenbrand
, 308 Ill. App. 3d at 391. However, the court held that when a motion for class certification has been pursued with reasonable diligence and is pending in court, a case does not become moot merely because a tender was made.  "To hold otherwise would allow a party to avoid ever defending a class action suit by simply tendering payment to the named plaintiffs, in each class action filed against it, prior to the trial court's ruling on their motion for class certification."  
Hillenbrand
, 308 Ill. App. 3d at 392.   

In this case it is clear that defendant tendered the refund offer to plaintiff less than a month after plaintiff filed the class action complaint.  Plaintiff did not file a motion for class certification until approximately 15 months after that tender was offered.  In determining whether under these circumstances plaintiff pursued a motion for class certification with reasonable diligence, we turn to two recent decisions by this court.

In 
Arriola v. Time Insurance Co.
, 323 Ill. App. 3d 138, 751 N.E.2d 221 (2001), 
the defendant insurance company had improperly sought subrogation from its insureds even though their policies did not provide for subrogation.  The plaintiff filed suit and sought to represent a class consisting of all the insureds from whom the defendant had recovered such funds.  After the suit was filed but before plaintiff filed a motion to certify the class, the defendant tendered payment to all 48 prospective members of the class in Illinois.  Forty-six of those persons accepted the tender.  Plaintiff was one of the two persons who did not accept the tender.  The trial court granted the insurer's motion to dismiss for lack of numerosity, and the insured appealed. This court reversed and remanded. On remand, the trial court certified a question.  
This court granted plaintiff's application for leave to appeal.  

On appeal, we acknowledged that whether a motion to certify a class has been filed is an important consideration in determining the effect a tender offer has on a class action suit.  
Arriola
, 323 Ill. App. 3d at 148. "Case law also requires that motions to certify a class be filed expeditiously, especially in cases where the named representatives' claims may become moot." 
Arriola
, 323 Ill. App. 3d at 148. This court held that, in the absence of a court order to the contrary, it is permissible for a defendant to tender the full amount of damages to the named plaintiff and putative members of the class prior to the filing of the motion to certify the class.  "This is true even if the purpose behind making the tender is to prevent class formation."  
Arriola
, 323 Ill. App. 3d at 150, citing to 
Lusardi v. Xerox Corp.
, 975 F.2d 964, 982 (3d Cir. 1992).  In 
Arriola
, the plaintiff never filed a motion for class certification.  This court concluded that plaintiff was no longer a proper class representative because he could not establish that the requisite case or controversy existed after defendant tendered plaintiff's recoverable damages.  
Arriola
, 323 Ill. App. 3d at 151. 

In 
Gelb v. Air Con Refrigeration & Heating, Inc.
, 326 Ill. App. 3d 809, 761 N.E.2d 265 (2001), 
this court expounded upon our holding in 
Arriola
 that a plaintiff must pursue a motion for class certification with reasonable diligence.  "
Arriola
 also made clear that [its] conclusion***was primarily grounded in the plaintiff's lack of due diligence." 
Gelb
, 326 Ill. App. 3d at 821.  The court noted that in 
Arriola
 we stated:

" 'Our holding in this case is largely based on the failure of the plaintiff to file a motion to certify a class 
and
 the lengthy delay between (1) the day the complaint was filed (August 30, 1993), (2) the day the defendant filed the motion to dismiss (November 4, 1994), and (3) the day the trial court granted that motion (May 15, 1995).' " (Emphasis in original.) 
Gelb
, 326 Ill. App. 3d at 821. quoting 
Arriola
, 323 Ill. App. 3d at 151-52. 

In applying 
Arriola
, this court noted that 
Gelb
 was factually dissimilar in that the defendants filed their motion to dismiss 56 days after plaintiff filed his complaint, and the trial court ruled on that motion 111 days after plaintiff filed the complaint.  This court noted that if a defendant in a class action were to tender the full amount of damages to the plaintiff before the court has a reasonable opportunity to consider class certification, the court has the authority to deny a motion to dismiss based on the unaccepted tender.  
In reversing the trial court's grant of defendant's motion to dismiss, we held that "[w]hile a plaintiff's due diligence must be determined on a case-by-case basis, we feel that the interests of the absent class as well as the integrity of the judicial process, namely, allowing a plaintiff a reasonable opportunity to file a motion for certification, outweigh any concerns of whether plaintiff has been tendered the full amount of his claim or whether he has even filed a motion for certification." 
Gelb
, 326 Ill. App. 3d at 822.   

The case at bar is more factually similar to 
Arriola
 than it is to 
Gelb
.  Plaintiff filed his complaint on October 20, 1998.  Defendants did not move to dismiss the class action claims until April 8, 1999.  The trial court granted the motion but continued to allow plaintiff to amend and refile the class allegations.  Plaintiff did not move to certify the class until some 16 months after filing the complaint, after defendant filed its final motion to dismiss the complaint.  The trial court did not fully dismiss the complaint with prejudice until March 21, 2000, almost a year and a half after the complaint was filed.
  Plaintiff has failed to demonstrate reasonable diligence in this case, and therefore, his individual claims were properly dismissed as moot.

Additionally, because no remaining class member has moved to substitute himself as a named representative, the class action claims were also properly dismissed as moot.  
Arriola
, 323 Ill. App. 3d at 151, citing 
Wheatley v. Board of Education of Township High School District 205
, 99 Ill. 2d 481, 486-87, 459 N.E.2d 1364 (1984).

Plaintiff insists that his class action claims should not have been struck at the pleading stage without allowing discovery on the class issues.  However, plaintiff's argument is directly contrary to Illinois law.  A motion to dismiss for failure to state a cause of action may be acted upon in a class action before determination of certification issues.  
Arriola
, 323 Ill. App. 3d at 149, citing 
Dixon v. Mercury Finance Co.
, 296 Ill. App. 3d 353, 360, 694 N.E.2d 693 (1998); 
Schlessinger v. Olsen
, 86 Ill. 2d 314, 320, 427 N.E.2d 122 (1981).  Illinois courts have consistently recognized that a class action complaint should be dismissed at the pleading stage if the complaint fails to meet the statutory requirements for class certification.  See 
McCabe v. Burgess
, 75 Ill. 2d 457, 466-67, 389 N.E.2d 565 (1979); 
Elder v. Coronet Insurance Co.
, 201 Ill. App. 3d 733, 754, 558 N.E.2d 1312 (1990).  
Therefore, the trial court was not required to allow plaintiff discovery on the class issues before dismissing the class allegations in the complaint.

B.  Declaratory Judgment

For the reasons stated above, plaintiff's action for declaratory judgment was also properly dismissed as moot.  Even if the action was not moot, plaintiff has still failed to meet the requirements for obtaining a declaratory judgment.  Plaintiff's complaint sought a declaratory judgment as to the meaning of the phrase "repeated efforts."  The granting or denying of declaratory relief rests within the sound discretion of the trial court, and the complaining party on appeal must show affirmatively an abuse of discretion.  
Marlow v. American Suzuki Motor Corp.
, 222 Ill. App. 3d 722, 728, 584 N.E.2d 345 (1991).  The purpose of declaratory judgment is "'to allow the court to address a controversy one step sooner than normally, after the dispute has arisen but before steps are taken which give rise to a claim for damage or other relief. [Citation.]'"  
AEH Construction, Inc. v. Department of Labor
, 318 Ill. App. 3d 1158, 1161, 743 N.E.2d 1105 (2001).  To maintain an action for declaratory relief, it is essential that there be an "actual controversy" and the party seeking the declaration must have a tangible legal interest in that controversy.  
Underground Contractors Ass'n v. City of Chicago
, 66 Ill. 2d 371, 375, 362 N.E.2d 298 (1977).  A complaint for declaratory judgment that recites an actual controversy between the parties in sufficient factual detail and requests a declaration of rights is sufficient to state a cause of action.  
Schwanke, Schwanke & Associates v. Martin
, 241 Ill. App. 3d 738, 744, 609 N.E.2d 654, 659 (1992).  The case must present a concrete dispute requiring the immediate and definitive determination of the parties' rights, the resolution of which will advance the conclusion of the controversy or some part thereof.  
Underground Contractors Ass'n. v. City of Chicago
, 66 Ill. 2d at 375, 362 N.E.2d at 300.

In 
Marlow
, the plaintiffs, individually and as representatives of a class, sued for a declaratory judgment that motor vehicles manufactured by the defendants were defectively designed.  The complaint stated that the central question in each class member's claim was whether the Suzuki Samurai had a common design defect which caused them to suddenly roll over.  In affirming the trial court's grant of defendant's motion to dismiss, this court noted that section 2-701(a) of the Code of Civil Procedure (735 ILCS 5/2-701(a) (West 1998)) provides that "[t]he court shall refuse to enter a declaratory judgment or order, if it appears that the judgment or order, would not terminate the controversy or some part thereof, giving rise to the proceeding."
 
Marlow
, 222 Ill. App. 3d at 730.  
The plaintiffs, without citing any case law, relied solely on the language of this statute.  This court reasoned that an analysis of the language leads to the conclusion that the phrase "some part" of the controversy does not mean an element of a single claim but, rather, it means an entire claim that is part of more than one claim.  
Marlow
, 222 Ill. App. 3d at 730. Therefore, because plaintiffs would still need to prove causation and damages, a declaratory judgment that the Suzuki Samurai was defective in its design would not lead to the conclusion of "some part" of the controversy.

Our case is directly analogous.  The trial court properly dismissed plaintiff's declaratory action because a declaration defining the phrase "repeated efforts" would not lead to the conclusion of any entire claim.  First, not all members of the proposed class have an actual  controversy.  It has not been established that every member of the class of Compaq purchasers has experienced malfunctions with his or her  computer.  In addition, plaintiff's brief fails to explain which claims in his action would be resolved by the proposed declaration.  Like the plaintiffs in 
Marlow
, the plaintiff and any member of the class or 

subclass would still need to establish other elements of the claim in order to terminate the controversy.  Further, as explained in detail in our discussion of the issue of mootness, plaintiff no longer has a tangible legal interest in the controversy and therefore he cannot maintain an action for declaratory relief in this matter.  
Underground Contractors Ass'n. v. City of Chicago
, 66 Ill. 2d at 375, 362 N.E.2d at 300.
 

Plaintiff only cites one case in support for his proposition.  A review of that case, however, lends further support to holding that the trial court did not abuse its discretion in finding that granting declaratory judgment in this case would be improper.  In 
AG Farms, Inc. v. American Premier Underwriters, Inc.
, 296 Ill. App. 3d 684, 695 N.E.2d 882 (1998), this court noted that 
Marlow
 held that the phrase "some part" means not just an element of a claim but " 'an entire claim which is part of more than one claim. [Citation.]' "  
AG Farms, Inc.
, 296 Ill. App. 3d at 693. In 
Marlow
, the relief sought and denied was only one element of the cause of action.  
"In the present action, plaintiffs seek a declaration that the defendants have no rights or interest in the property.  Plaintiffs argue that this declaration would resolve 'some part' of the matter because it would determine that these claimants have no rights, even if it would not determine precisely who does own the property.  Under this view, declaratory judgment in this case would dispose of 'an entire claim,' that is, defendants' claim of title to the property."  
AG Farms, Inc.
, 296 Ill. App. 3d at 693.  Our case is distinguishable.  Whereas the  declaratory judgment sought in 
AG Farms
 would clearly define property rights and terminate the litigation as to the defendant, issuance of the declaratory judgment plaintiff seeks in the case at bar would not result in a final adjudication of any claims.  As did the court in 
Marlow
, we find persuasive the language of the district court in 
Sarafin v. Sears Roebuck & Co.
, 446 F. Supp. 611, 615 (N.D. Ill. 1978):

"Plaintiff here is not attempting to settle a controversy before it ripens into a legal liability, nor is she trying to terminate litigation.  On the contrary, the declaratory relief she requests would operate as a prelude to or preparation for a myriad of individual claims."

For these reasons, we find that the trial court properly dismissed the plaintiff's action for declaratory judgment.  

C.  Attorney's Fees

Finally, plaintiff claims that the trial court erred in denying in part plaintiff's petition for attorney fees and costs.  Plaintiff argues that he is entitled to an award of attorney fees and costs as a "prevailing party" under the Magnuson-Moss Warranty Act.  Specifically, plaintiff maintains that he was entitled to all of the attorney fees sought because he was successful in the significant issue in the case and achieved the benefit sought in the complaint, namely, the refund of the purchase price of the computer.

Plaintiff petitioned the trial court for $34,216.25 in fees and costs.  The defendant did not dispute that plaintiff was entitled to recover reasonable attorney fees expended in obtaining the requested tender, but maintained that plaintiff's entitlement to fees and costs should be limited to $2,843, the litigation expenses before the initial tender was offered to plaintiff.  Defendant maintained that plaintiff was not entitled to recover attorney fees for claims upon which he did not prevail.  The trial court, in considering both positions, after dismissing plaintiff's third amended complaint, awarded plaintiff $6,000 in attorney fees and $488.20 in expenses.

Defendant now maintains that plaintiff is not entitled to increase the amount of attorney fees awarded where plaintiff was not entitled to any fees in the first place.  In a motion to cite supplemental authority, defendant directs this court's attention to the recent Supreme Court holding in 
Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources
, 532 U.S. 598, 149 L. Ed. 2d 855, 121 S. Ct. 1835 (2001).  Finding this case dispositive of this issue, we hold that the trial court did not abuse its discretion in determining the amount of attorney fees and costs.

In the United States, parties are ordinarily required to bear their own attorney fees--the prevailing party is not entitled to collect from the loser.  
Alyeska Pipeline Service Co. v. Wilderness Society
, 421 U.S. 240, 247, 44 L. Ed. 2d 141, 147
, 95 S. Ct. 1612, 1616, (1975). Under this "American Rule," we follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." 
Key Tronic
 
Corp. v. United States
, 511 U.S. 809, 819, 114 S. Ct. 1960, 1967, 128 L. Ed. 2d 797, 807 (1994).
 Congress, however, has authorized the award of attorney fees to the "prevailing party" in numerous statutes, one of which includes the Magnuson-Moss Warranty Act (15 U.S.C. §2310(d)(2) (1994)).  
"In designating those parties eligible for an award of litigation costs, Congress employed the term 'prevailing party,' a legal term of art.  Black's Law Dictionary 1145 (7th ed. 1999) defines 'prevailing party' as '[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded in certain cases, the court will award attorney's fees to the prevailing party." 
Buckhannon Board & Care Home Inc.
, 532 U.S. at 603, 149 L. Ed. 2d at 862, 121 S. Ct. at 1839
.

In 
Buckhannon
, the Court held that the fee-shifting provisions of the Fair Housing Amendments Act of 1988 (42 U.S.C. §3601 
et
 
seq
. (1994))  and of the Americans with Disabilities Act of 1990 (42 U.S.C. §12101 
et
 
seq
. (1994)) which permit a court, in its discretion, to award reasonable attorney fees to the prevailing party, require a party to secure either a judgment on the merits or a court-ordered consent decree in order to qualify as a "prevailing party."  The petitioners argued that they were entitled to attorney fees under the "catalyst theory," which posits that a plaintiff is a "prevailing party" if he achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.  
Buckhannon Board & Home Care, Inc.
, 532 U.S. at 605, 149 L. Ed. 2d at 863, 121 S. Ct. at 1840.
 In rejecting the 
"catalyst theory," the court reasoned that this theory would allow an award where there is no judicially sanctioned change in the legal relationship of the parties.  "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial 
imprimatur
 on the change.  Our precedents thus counsel against holding that the term 'prevailing party' authorizes an award of attorney's fees 
without
 a corresponding alteration in the legal relationship of the parties."   (Emphasis in the original.)
 
Buckhannon Board & Home Care, Inc.
, 532 U.S. at 605, 149 L. Ed. 2d at 863, 121 S.Ct. at 1840.

In applying 
Buckhannon
 retroactively, as required under 
Harper v. Virginia Deptartment of Taxation
, 509 U.S. 86, 97, 113 S. Ct. 2510, 2517, 125 L. Ed. 2d 74, 86 (1993) ("[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule") to the case at bar, plaintiff's claim must fail.  Plaintiff argues that he is entitled to attorney fees under a catalyst theory, maintaining that although his action was dismissed, he "prevailed" in that he received the desired refund.  This argument has been flatly rejected by the Supreme Court.  Plaintiff did not secure a judgment on the merits or a court-ordered consent decree, and therefore, he cannot be deemed a "prevailing party."  For these reasons, plaintiff is not entitled to an increase in the attorney fees awarded. 

Accordingly, for the foregoing reasons we affirm the decision of the trial court
.

Affirmed.

GREIMAN and REID, JJ., concur.