2018 IL App (2d) 170498
No. 2-17-0498
Opinion filed July 13, 2018

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| RICHARD ALDERSON and ANN ALDERSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | No. 17-L-87 |
| | ) | |
| ERIN C. WEINSTEIN, in Her Official Capacity as Clerk of the Circuit Court of Lake County and as a Representative of All Illinois Circuit Court Clerks, | ) ) ) ) | |
| | ) | Honorable |
| | ) | Margaret J. Mullen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Jorgensen and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs, Richard and Ann Alderson, brought suit seeking *mandamus* and "other relief" against defendant, Erin C. Weinstein, in her official capacity as clerk of the circuit court of Lake County and as a representative of all circuit court clerks in the state. The trial court dismissed the Aldersons' complaint as moot and we affirm.

¶ 2    In 2015, the Aldersons filed a complaint in arbitration in the circuit court of Lake County. In January 2016, the Aldersons' complaint was dismissed for want of prosecution—a court order also known as a "DWP." Two weeks later, when the Aldersons sought to vacate the dismissal

and reinstate the case, Weinstein's office charged them a $50 fee. The Aldersons' attorney paid the fee; the arbitration case was reinstated, it proceeded to judgment, and it is now closed. *Alderson v. Nielson Development Inc.*, No. 15-AR-832 (Cir. Ct. Lake County). The Aldersons' case against the circuit clerk's office, however, was just beginning.

¶ 3    A section of the Clerks of Courts Act, applicable to Lake County, authorizes the circuit clerk to charge "a minimum of $50 and a maximum of $60" when a party files a "[p]etition to vacate or modify any final judgment or order of court" in most civil cases. 705 ILCS 105/27.2a(g)(1) (West 2016). The key word there is *final*—that is, that the fee applies only to final judgments—as for some time now it has been absolutely clear that a DWP does not become final until the one-year period to refile a claim has expired. See *S.C. Vaughan Oil Co. v. Caldwell, Troutt & Alexander*, 181 Ill. 2d 489, 506 (1998); see also *Flores v. Dugan*, 91 Ill. 2d 108, 112 (1982); *Franzese v. Trinko*, 66 Ill. 2d 136, 138-40 (1977); *Kutnick v. Grant*, 65 Ill. 2d 177, 181 (1976); *Brite Lights, Inc. v. Gooch*, 305 Ill. App. 3d 322, 326 (1999). Accordingly, Weinstein was not statutorily authorized to assess the Aldersons $50 to vacate the DWP as it was not yet final.

¶ 4    The Aldersons filed the instant lawsuit against Weinstein, both in her official capacity and as "a Representative of all Clerks of the Circuit Courts of all Counties within the State of Illinois." As the Aldersons' complaint noted, in *Gassman v. Clerk of the Circuit Court*, 2017 IL App (1st) 151738, the appellate court struck down the practice of collecting a fee to vacate a non-final DWP under a similar provision of the Clerks of Courts Act, one that applies exclusively to Cook County. Accordingly, the first count of the Aldersons' complaint sought a writ of *mandamus* compelling Weinstein, and all other circuit clerks, to "cease the collection of any fees" and return all previously collected fees for the filing of a petition challenging *any* court

order "that is not final." The second count sought an accounting from Weinstein and all other circuit clerks for all fees collected for petitions to vacate DWPs. The Aldersons also asked the court to treat their complaint as a "class action" and to permit "recovery on behalf of all litigants who have paid the fees in question" to Weinstein and all other circuit clerks.

¶ 5    Shortly after the Aldersons filed suit, Weinstein sent a $50 refund check to the Aldersons' attorney in the arbitration case and a check for $291 to the Aldersons' current attorney—a refund for the filing fees for the instant case. The arbitration attorney cashed Weinstein's $50 check; however, it appears that the Alderson's present attorney has not cashed the check for $291. In any event, after Weinstein issued the checks, she filed a motion to dismiss the Aldersons' complaint as moot. See 735 ILCS 5/2-619(a)(9) (West 2016). Attached to the motion was an affidavit from Weinstein that recited the foregoing and further stated that her office would no longer charge a filing fee for *any* petition or motion seeking to vacate or modify a DWP. Based on her affidavit, Weinstein's motion stated that there was nothing left to the Aldersons' suit; they had received everything they were entitled to, and the case was now moot.

¶ 6    After the motion to dismiss was filed, the Aldersons filed a motion requesting a hearing on class certification (see *id.* §§ 2-801, 2-802), as well as a motion for judgment on the pleadings (*id.* § 2-615(e)). The Aldersons further asserted that their case was not moot, because they had *not* received "full relief"—namely, (1) Weinstein's consent to a *mandamus* order compelling her to issue a refund and enjoining her from collecting filing fees for pleadings challenging DWPs, (2) a similar order applicable to all other circuit clerks in the state, and (3) an accounting from Weinstein and all other circuit clerks. Finally, the Aldersons asserted that, even if Weinstein's tender was sufficient, the case could proceed under one of two exceptions to the mootness doctrine.

¶ 7    The trial court determined that the case was moot and that none of the exceptions applied. The Aldersons appeal and we affirm.

¶ 8    At present, Illinois law draws no distinction between an accepted offer of tender and an unaccepted offer of tender. For example, in *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481 (1984), where a class of teachers sued the school board that had dismissed them, the court held that the named plaintiffs' claims were mooted when they *accepted* the school board's offer of reemployment. However, in *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450 (2011), the court held that the defendant airline's offer to refund the $40 checked-baggage fee (*i.e.*, the consumer plaintiff's only alleged damages) mooted the plaintiff's claims, even where the offer was *rejected* by the plaintiff's counsel. So, for the purpose of evaluating mootness in this case, it does not matter that the Aldersons claim that they have not accepted Weinstein's offer. See *id.*

¶ 9    In *Barber*, our supreme court held that "the important consideration in determining whether a named representative's claim is moot is whether that representative filed a motion for class certification prior to the time when the defendant made its tender." *Id.* at 456. "Where the named representative has done so, and the motion is thus pending at the time the tender is made, the case is not moot, and the circuit court should hear and decide the motion for class certification before deciding whether the case is mooted by the tender." *Id.* at 456-57. However, where, as here, the offer was made before a motion for class certification was filed, "the interests of the other class members are not before the court [citation], and the case may properly be dismissed." *Id.* at 457; see also *Ballard RN Center, Inc. v. Kohll's Pharmacy & HomeCare, Inc.*, 2015 IL 118644, ¶¶ 42-45 (applying *Barber*).

¶ 10    Under *Barber*, then, this is a simple case. The record is clear that the Aldersons had not formally sought class certification before Weinstein tendered them financial relief and filed her motion to dismiss. That was, more or less, the end of this matter; as *Barber* explains, a putative class action is moot "where the named plaintiffs were granted the relief requested" prior to seeking class certification. *Barber*, 241 Ill. 2d at 459; see also *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 29 (explaining that it is the "timing of the tender" that moots a putative class action). *But*, the Aldersons maintain, they have *not* received the relief they requested. They point out that their complaint did not request $341 (a refund of the $50 fee plus the $291 filing fees for the instant case) or any specific amount of money or a policy declaration from the circuit clerk. Rather they sought a writ *ordering* the clerk to refund their fee ($50), as well as an accounting, as well as a similar order applicable to all other circuit clerks in the state. In this regard, the Aldersons have taken a snippet of *Barber* to an unreasonable extreme. Illinois law holds that a suit is moot where the defendant tenders to the plaintiff "the *essential* relief demanded." (Emphasis added.) *Wheatley*, 99 Ill. 2d at 485. In other words, "[m]ootness occurs once the plaintiff has secured what he *basically sought*" and thus a court's "resolution of the issues could not have any practical effect on the existing controversy." (Emphasis added.) *Hanna v. City of Chicago*, 382 Ill. App. 3d 672, 677 (2008).

¶ 11    Here, the complaint alleged that the Aldersons were charged a $50 fee by the circuit clerk in excess of the clerk's statutory authority; the circuit clerk issued the Aldersons a refund and stated in an affidavit that she had implemented a policy to ensure that others would not be erroneously charged a fee when filing a motion to vacate a DWP. By any reasonable measure, the Aldersons have received what they basically sought *and more*, considering that they never requested a refund of their filing fees for the instant case ($291) and yet have received a check

for that amount. See *Grimes v. Sage Telecom Communications, LLC*, 2018 IL App (1st) 171455, ¶ 20 (noting that there is no statutory requirement that "to be effective, the tender must include the court costs incurred by the plaintiff in initiating the litigation").

¶ 12    In addition, the Aldersons put the cart before the horse when they sought to treat Weinstein, in her official capacity, as a "representative" defendant. No allegation was made in the complaint as to why Weinstein is a representative for any other circuit clerk, let alone all other circuit clerks in the state, none of whom were joined as defendants. *Cf. Gaffney v. Shell Oil Co.*, 19 Ill. App. 3d 987, 994 (1974) (expressing doubt about the validity of naming one defendant as a group representative). And, so, as we have said, the Aldersons have essentially received all that they are entitled to and then some. Their purported nonacceptance notwithstanding, pursuant to *Barber*, this case is indeed moot.

¶ 13    We note that, for purposes of mootness, our supreme court has consistently relied on decisions of the Seventh Circuit Court of Appeals that made no distinction between accepted and rejected offers of settlement. See, *e.g.*, *Ballard*, 2015 IL 118644, ¶ 34 (citing *Barber*, 241 Ill. 2d at 456-57, citing *Susman v. Lincoln American Corp.*, 587 F.2d 866, 869 (7th Cir. 1978)). The Aldersons point out that the Seventh Circuit has since taken a different tack in *Chapman v. First Index, Inc.*, 796 F.3d 783, 786-87 (7th Cir. 2015). There, the court adopted Justice Kagan's dissent in *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66 (2013), holding that, without acceptance, mere offers do not deprive a court of jurisdiction, because relief is still possible. In other words, only accepted offers of settlement can moot a plaintiff's claims. We would add that after *Chapman* a majority of the United States Supreme Court adopted Justice Kagan's position as well, explaining that:

" 'When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer—like any unaccepted contract offer—is a legal nullity, with no operative effect. As every first-year law student learns, the recipient's rejection of an offer "leaves the matter as if no offer had ever been made." *Minneapolis & St. Louis R. Co. v. Columbus Rolling Mill*, 119 U.S. 149, 151 \*\*\* (1886). [The rule in question] specifies that "[a]n unaccepted offer is considered withdrawn." Fed. Rule Civ. Proc. 68(b). So assuming the case was live before—because the plaintiff had a stake and the court could grant relief—the litigation carries on, unmooted.' " *Campbell-Ewald Co. v. Gomez*, 577 U.S. ___, ___ 136 S. Ct. 663, 670 (2016) (quoting *Genesis Healthcare*, 569 U.S. at 81 (Kagan, J., dissenting)).

¶ 14    Our supreme court has not yet considered whether, in light of *Campbell-Ewald*, Illinois courts should continue to draw no distinction between accepted and rejected settlement offers when determining whether a case is moot. That question, as Justice Kagan points out, has a number of practical consequences for both individual litigants and certified-class plaintiffs. See *Genesis*, 569 U.S. at 80-81 (Kagan, J., dissenting). Relevant to Illinois law, we note that the approach adopted in *Campbell-Ewald* appears to be harmonious with recent pronouncements on the constitutional dimension of subject-matter jurisdiction in Illinois circuit courts. That is, the concept of "tender" is defined by statute (see *Grimes*, 2018 IL App (1st) 171455, ¶ 21 (citing 735 ILCS 5/5-126 (West 2016))), and as our supreme court has repeatedly explained, compliance with statutory requirements *vel non* does not affect a circuit court's constitutional authority to hear and determine a given case (see *McCormick v. Robertson*, 2015 IL 118230, ¶ 23; *In re Luis*

*R.*, 239 Ill. 2d 295, 300-02 (2010); *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 340-41 (2002)).

¶ 15    That said, even if Illinois were to adopt the *Campbell-Ewald* approach, any distinction between accepted and rejected offers would likely matter little in this case. As noted earlier, the Aldersons concede that their attorney in the arbitration case (*i.e.*, their agent) cashed Weinstein's $50 refund check for the filing fee. The amount of the check represented the full damages the Aldersons had requested, and its cashing could be reasonably construed as an acceptance of the settlement—or at the very least, a failure to reject it. See generally *Bruemmer v. Compaq Computer Corp.*, 329 Ill. App. 3d 755, 761 (2002); *Hillenbrand v. Meyer Medical Group, S.C.*, 308 Ill. App. 3d 381, 389 (1999). The Aldersons appear to claim that their prior attorney cashed the check without their knowledge or authorization. If true, that might mean that there is a controversy between them and their attorney; but what is clear is that there is no longer a controversy between them and Weinstein. At any rate, under *Barber*, this case is moot.

¶ 16    The Aldersons' final argument is that, even if their complaint is moot (and as we have explained, it is), their claims should still be considered under two exceptions to the mootness doctrine. True enough, "Illinois courts have found exceptions to the mootness doctrine in actions where there is substantial public interest [citation] or where the issues were likely to recur but unlikely to last long enough to allow appellate review to take place [citation]." *Wheatley*, 99 Ill. 2d at 485. However, neither exception applies in this case.

¶ 17    As to the first exception, this case simply is not a matter of substantial public concern. Although this case did involve a public official, a decision on its merits would be of no more guidance to circuit clerks than that already issued by the Appellate Court, First District, in *Gassman*, 2017 IL App (1st) 151738. Put differently, "[t]here are no public officers who need an

authoritative resolution of the question presented" in this case "in order to perform their duties" (*Fisch v. Loews Cineplex Theatres, Inc.*, 365 Ill. App. 3d 537, 542-43 (2005))—particularly *after Gassman*.

¶ 18    We also reject the Aldersons' assertion—under the public-interest exception, under the harms-evading-review exception, and as part of their argument that they *need* a writ of *mandamus*—that we should not take Weinstein at her word that she will not continue to collect the fee. As we have explained before, when the defendant is a public official, "greater stock is placed in their acts of self-correction, as long as they appear genuine." *La Salle National Bank, N.A. v. City of Lake Forest*, 297 Ill. App. 3d 36, 45 (1998). In this case, Weinstein's actions, as recounted in her affidavit, seem sincere enough, and we take her at her word.

¶ 19    Moreover, we are not persuaded by the Aldersons' reliance on the litigation in another case, McGovern v. Brin, 16-CH-1249 (Cir. Ct. Lake County), a suit brought against Weinstein's predecessor in office. As best we can determine from the limited record the Aldersons have provided of the McGovern proceedings, it appears that in the McGovern suit the plaintiffs failed to appear in a foreclosure action, and a default judgment of foreclosure was entered against them. Six months later, when the McGoverns sought to vacate the judgment in court, Weinstein's office charged them a $75 fee to do so. The McGoverns later sued Weinstein on grounds similar to the Aldersons'. Contrary to the Aldersons' claim, however, the McGovern matter does *not* show that Weinstein has adopted "inconsistent positions as to her 'new policy.' " Again, a DWP becomes final one year after it is entered. *S.C. Vaughan Oil*, 181 Ill. 2d at 506. A judgment of foreclosure, however, although not appealable without an Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) finding, "*is final* as to the matters it adjudicates." (Emphasis added.) *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 11. Thus, while it is clear that section 27.2a(g)(1)

of the Clerks of Courts Act did not authorize the clerk to collect a filing fee from the Aldersons to vacate their DWP, it is far from clear that collecting a filing fee from the McGoverns was unwarranted.

¶ 20    The Aldersons' reliance on the exception to mootness for cases capable of repetition that elude judicial review is also untenable. For one thing, the exception generally applies when the subject is likely to arise again between the same litigants (see *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Sosna v. Iowa*, 419 U.S. 393, 399-400 (1975)), and we have no reason to think that the Aldersons will face an erroneous filing fee to vacate a DWP in the future, whether by Weinstein or by others in her name. And, finally, as the existence of the McGovern litigation indicates, the erroneous collection of filing fees does not foreshadow a special, evanescent controversy that threatens to evaporate before it could be addressed through ordinary judicial review.

¶ 21    Pursuant to *Barber*, the Aldersons' case is moot, and no exception applies to save it. Accordingly, the judgment of the circuit court of Lake County, which dismissed the complaint, is affirmed.

¶ 22    Affirmed.