960 A.2d 1257

**HYUNDAI MOTOR AMERICA**

v.

**Angela R. ALLEY.**

**No. 1495 Sept.Term, 2007.**

Court of Special Appeals of Maryland.

Dec. 2, 2008.

Steven R. Freeman (Brett R. Myerson, Freeman, Wolfe & Greenbaum, PA, on the brief), Towson, MD, for Appellant.

Hy David Rubenstein (Ronald Rowland, Kimmel & Sullivan, PC, on the brief), Owings Mills, MD, for Appellee.

Panel: HOLLANDER, ZARNOCH and WRIGHT, JJ.

ZARNOCH, Judge.

Appellant, Hyundai Motor America, is appealing a decision by the Circuit Court for Cecil County awarding attorney's fees to appellee, Angela Alley, under the fee shifting provisions of the Maryland Automotive Warranty Enforcement Act, the Maryland Consumer Protection Act, and the federal Magnuson–Moss Warranty Act. The fees were awarded after the

parties negotiated a settlement of the case, and prior to any adjudication of the merits of appellee's claims. Appellant presents the following questions:

1. Did the circuit court err in granting appellee's petition for attorney's fees and costs based on a finding that appellee was a prevailing party under the fee shifting statutes at issue?

2. Did appellee satisfy her burden of presenting legally sufficient evidence as to the reasonableness of the fees claimed in order to support any fee award by the circuit court?

3. Did the circuit court properly apply the lodestar analysis in determining the amount of attorney's fees to award?

For the following reasons, we affirm in part and vacate and remand in part.

## FACTS AND LEGAL PROCEEDINGS

On June 19, 2006, Angela R. Alley ("Alley"), appellee, filed suit against Hyundai Motor America ("Hyundai"), appellant, in the Circuit Court for Cecil County, relating to the purchase of a new vehicle that was defective. Appellee alleged various claims arising under the Maryland Automotive Warranty Enforcement Act ("AWEA"), Md.Code Ann. (1975, 2005 Repl. Vol., 2007 Supp.), § § 14–1501 *et seq.* of the Commercial Law (CL) Article; the Consumer Protection Act ("CPA"), Md.Code Ann., CL §§ 13–301 *et seq.*; and the Magnuson–Moss Warranty Act ("MMWA"), 15 U.S.C.A. §§ 2301. Appellee sought monetary damages, in an amount equal to the full contract price ($20,317) of the new 2005 Hyundai Sonata, plus "all collateral charges, attorney's fees, and court costs." A jury trial was scheduled for May 29, 2007.

On the day of the trial, after the court convened, but before the jury was selected, Hyundai and Alley reached a settlement under which Hyundai agreed to "swap-out" the one-year-old

2005 Sonata with a new 2007 Sonata equipped with the same options as the vehicle replaced. The settlement agreement was read into the record in open court.[1] Reciting the details of the settlement, Hyundai's counsel admitted that the new vehicle was worth "so much more" than the old vehicle. Left unsettled was whether appellee was entitled to attorney's fees. The parties asked the court to retain jurisdiction over a petition for attorney's fees, which it did. The court did not expressly approve the settlement.[2] The recital of the settlement ended with Hyundai's counsel stating that "this case will be dismissed with prejudice, as of today, with the agreement of the swap being put on the record." However, no docket entry reflects a dismissal, either by court order or stipulation of the parties. *See* Maryland Rule 2–506.

---

1. Hyundai's counsel put the following settlement on the record:

   Your Honor, in this case, as the Court knows we were given a repair order this morning of which we did not have knowledge of prior, and there was an issue that it created with respect to whether this vehicle, that is the subject of the suit, has continuing problems that it's exhibited approximately 1 year ago. Under those circumstances HMA is offering to the Plaintiffs and I understand that they are accepting it. That we will perform what's called a swap out. It is not an admission of liability. It is not released under the Maryland lemon law, Magness and Moss [*sic*], or the Consumer Protection Law. It is simply this. That in consideration of the settlement without any admission of liability, Defendant will give to the Plaintiff's [*sic*] or the Plaintiff, Mrs. Alley, she's the only owner of the vehicle, a new current model year Sonata, which is the model that she owns, so it's a 2007, to replace the 2005. They will give the 2005 to Hyundai Motor of America, it will be similarly equipped with options and it will be in the color of their choice. And the way it works essentially, is they tell us the color and we will find a vehicle and then they will come up and look at it to see if it's acceptable. I understand that there is a loan on the vehicle, and typically because the new vehicle is worth so much more than the old one is worth, you can simply just substitute collateral in order to keep the loan the exact same amount, the exact same price. None of us can foresee whether the finance company will actually do that, this is not financed through Hyundai Motor Finance, it's financed through a bank, but all of us here who have done this before believe it's highly likely. If they use the collateral, the new collateral is worth so much more that they'll be able to finance it and keep it at that level.

2. The court did note: "Mrs. Alley, congratulations, I hope you enjoy your new car."

On June 28, 2007, appellee filed a timely motion for attorney's fees and costs totaling $12,311.40. As part of the motion, appellee presented a four-page invoice, dated June 27, 2007, from her attorney's law firm, Kimmel & Silverman, P.C., with the dates various services were rendered, the initials of the person performing the task, a brief description of the service provided, the hours expended, the rate charge, and amount charged, which totaled $12,311.40.

Appellant filed a response in opposition to the motion, arguing that the appellee was not a prevailing party for fee-shifting purposes, and was therefore not eligible for an award of attorney's fees and costs. It also claimed that, if the appellee were a prevailing party, she failed to satisfy her burden of presenting sufficient evidence as to the reasonableness of the fees requested.

On September 6, 2007, the court heard both parties regarding the motion for attorney's fees and granted appellee attorney's fees in the amount requested. At the hearing, appellee's counsel noted that Maryland courts apply the lodestar approach (*see* discussion, pp. 275–78, 960 A.2d at pp. 1265–67, *infra*) in determining the amount of reasonable attorney's fees. He noted that his standard billing rate as an attorney with fifteen years experience was $275.00/hour. He claimed that all the rates listed in the law office's invoice were reasonable, and that under the lodestar methodology the firm could charge $90.00/hour for a paralegal, with differing rates for the attorneys depending upon the level of experience. He admitted that his firm had accepted the case on a contingency fee basis. The court found that appellee was a prevailing party and that the attorney's fees claimed were reasonable. Without any further analysis under the lodestar approach, the court granted appellee's motion and awarded attorney's fees in the requested amount.[3] On September 26, 2007, appellant

---

3. In making the award, the court said:

   In my opinion, ... the Plaintiff was the prevailing party. The settlement was to her satisfaction and the case was terminated with the exception of the reservation for attorney fees. And, therefore, under the Automotive Warranty Enforcement Act and the Magnuson–

filed a timely notice of appeal.

## DISCUSSION

**1. The circuit court did not err in finding that appellee was a prevailing party under state fee shifting statutes.**

Appellant argues that the court erred as a matter of law in granting appellee's petition for attorney's fees because she was not a prevailing party under the fee-shifting provisions of AWEA, MMWA, and CPA. Because they arose from "a common core of facts" and "related legal theories," appellee's state and federal claims are indivisible for purposes of determining prevailing party status. *Friolo v. Frankel,* 373 Md. 501, 524–25, 819 A.2d 354 (2003)("*Friolo I*"). Thus, we need only decide whether appellee is a prevailing party for state law purposes, rather than determine her success under the federal MMWA. *See Moedt v. Gen. Motors Corp.,* 204 Ariz. 100, 60 P.3d 240, 243 (Ct.App.2002) (awarding attorney's fees under state lemon law without addressing eligibility under MMWA). For the reasons set forth below, we conclude that appellee was a prevailing party under AWEA and CPA.

According to AWEA, "a court *may* award *reasonable* attorney's fees to a prevailing plaintiff under this section." CL § 14–1502(*l*)(1) (emphasis added). The CPA also provides

Moss Act, the Court may award reasonable attorney's fees to a prevailing plaintiff or party within the respective sections. And, undeniably, as mentioned this litigation dragged on for over a year before it was finally resolved and during the course of that time Counsel for the Plaintiff's [*sic*] expended time and effort, incurring legal obligations which are set forth in the billing included. And, all of the efforts exerted by Plaintiff's Counsel were directed to proceeding onto trial or settling the matter. It was eventually settled. The fees demanded appear to be reasonable and it is the opinion and decision of the Court that the Plaintiff's Motion for Attorney's Fees and Courts [*sic*] in the amount of $12,311.40 is hereby approved and granted by the Court.

The court's oral opinion did not mention an award of fees under the CPA. However, the fee award order recited that it granted appellee's motion, and the memorandum supporting that motion claimed fees under three statutes, including the CPA.

that "[a]ny person who brings an action to recover for injury or loss under this section and who is awarded damages *may* also seek, and the court *may* award, *reasonable* attorney's fees." CL § 13–408(b) (emphasis added). Under the MMWA:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he *may* be allowed by the court to recover *as part of the judgment* a sum equal to the aggregate amount of cost and expenses (including *attorneys' fees based on actual time expended* ) determined by the court to have been *reasonably incurred* by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C.A. § 2310(d)(2) (emphasis added).

Although appellant concedes that, under these statutes, a settlement can confer prevailing party status on a litigant, it argues that such a settlement must take the form of a consent decree or other court-approved change in the legal relationship of the parties. Relying primarily on federal cases, such as the Supreme Court's 5–4 decision in *Buckhannon Bd. & Care Home, Inc. v. W.Va. Dept. of Health & Human Res.*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), appellant argues that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605, 121 S.Ct. 1835. These "[p]rivate settlements," the Supreme Court said, will often be unenforceable by a federal court "unless the terms of the agreement are incorporated into the order of dismissal." *Id.* at 604, n. 7, 121 S.Ct. 1835.

Appellant may very well be correct that under federal statutes, such as MMWA, actual judicial approval of a settlement, such as that obtained in a consent decree, is required before an attorney's fee award can be made. *See Rodriguez–Freytas v. N.Y. City Transit Authority*, 95 F.App'x 392, 394

(2d Cir.2004); *Union of Needletrades, Indus. & Textile Employees, AFL–CIO, CLC v. U.S. Immigration & Naturalization Service,* 336 F.3d 200, 206 (2d Cir.2003); *Pitchford v. Oakwood Mobile Homes, Inc.,* 212 F.Supp.2d 613, 617 (W.D.Va.2002); *Bruemmer v. Compaq Computer Corp.,* 329 Ill.App.3d 755, 263 Ill.Dec. 516, 768 N.E.2d 276, 288 (2002). *But see American Disability Ass'n v. Chmielarz,* 289 F.3d 1315, 1320 (11th Cir.2002) (court may still award attorney's fees to prevailing party as long as: (1) it has incorporated terms of settlement into final order of dismissal or (2) it has explicitly retained jurisdiction to enforce terms of settlement); *Dufresne v. DaimlerChrysler Corp.,* 975 So.2d 555, 556 (Fla. 2d DCA 2008) (quoting *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach,* 353 F.3d 901, 905 (11th Cir.2003)) (explicit retention of jurisdiction over terms of settlement is functional equivalent of entry of consent decree); *Melton v. Frigidaire,* 346 Ill.App.3d 331, 281 Ill.Dec. 954, 805 N.E.2d 322, 327 (2004) (consent degree not required if judicial sanction is obtained by incorporation of settlement agreement into court order or on retention of jurisdiction to enforce its terms). However, here we are concerned only with state law. Thus, *Buckhannon* is not controlling.

Alternatively, appellant contends that this Court's decision in *Blaylock v. Johns Hopkins Fed. Credit Union,* 152 Md.App. 338, 831 A.2d 1120 (2003) requires actual judicial approval of a settlement agreement before a party is considered to have prevailed for State fee-shifting purposes. In *Blaylock,* this Court held that a consumer who settled a claim under the CPA was a prevailing party for fee-shifting purposes and noted:

> [A] consumer who achieves victory by means of an agreement *approved by the court* is entitled to attorney's fees, even though no consent decree or judgment is entered in favor of the prevailing party.

*Id.* at 355, 831 A.2d 1120 (emphasis added).

Appellant places undue reliance on the emphasized language. Under the facts of *Blaylock,* the settlement in ques-

tion "was approved by the court." *Id.* at 341, 831 A.2d 1120. The Court's later equation of such a settlement with prevailing party status was more likely the description of a past fact than the establishment of a future minimum. In short, we hold that *Blaylock* does not mandate an inflexible rule that judicial approval of a settlement is always required to make a litigant a prevailing party for state fee-shifting purposes.[4]

■ Having decided that neither *Buckhannon* nor *Blaylock* forecloses appellant's theory that she is a prevailing party, we must nevertheless determine whether in fact she holds that status with respect to her AWEA and CPA claims. Before examining what was achieved, in terms of whether the appellee succeeded, we consider how the settlement was accomplished, in terms of whether the procedure employed was inconsistent with the AWEA and the CPA.

■ It is a common, longstanding practice for settling parties to read into the court record the terms of an agreement before a lawsuit is voluntarily dismissed. *See, e.g., Parkinson v. Parkinson,* 42 Md.App. 650, 651–52, 402 A.2d 129 (1979), *Jackson v. Jackson,* 14 Md.App. 263, 268–69, 286 A.2d 778 (1972). Maryland cases recognize that such a "settlement order" is neither a judgment nor a court order. *See Consol. Constr. v. Simpson,* 372 Md. 434, 464–65, 813 A.2d 260 (2002) (collecting cases). In *Mitchell Props., Inc. v. Real Estate Title Co.,* 62 Md.App. 473, 490 A.2d 271 (1985), this Court said:

> A settlement agreement is a contract which the parties enter into for the settlement of a previously existing claim by a substituted performance. When this agreement is entered with the court, it is termed a settlement order; however, it is not a court order. Rather, it is a compromise

---

4. This is apparent from the federal cases cited favorably by *Blaylock* in support of its State law "prevailing party" standard, some of which are inconsistent with *Buckhannon* and some of which did not involve judicially-approved settlements. *Blaylock,* 152 Md.App. at 354–55, 831 A.2d 1120.

between the parties, which they submit to the court to stay the proceedings in the case.[5]

*Id.* at 482, 490 A.2d 271 (citations omitted).

■  Nevertheless, such a settlement is binding on the parties and enforceable against them. *Smelkinson Sysco v. Harrell,* 162 Md.App. 437, 453, 875 A.2d 188 (2005) (*"Sysco"*). According to 15A Am.Jur.2d *Compromise and Settlement* at § 49, "[a] party to a settlement seeking to redress a claimed breach, if the court case already has been dismissed, may bring an independent action for breach of contract; if the case has not been dismissed, the party may move for enforcement." There are no jurisdictional concerns about subsequent enforcement in an independent state court action, such as those raised in *Buckhannon* with respect to federal courts.  532 U.S. at 604, n. 7, 121 S.Ct. 1835.  *See also Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 382, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)(Absent district court retention of jurisdiction over the settlement or incorporation of the settlement in the dismissal order, "enforcement of the settlement agreement is for state courts...").

Neither the AWEA nor the CPA evidences an intent to impose any extraordinary procedural requirements on settling plaintiffs in order to be deemed as prevailing.  Noteworthy is the contrasting language of the federal MMWA, which authorizes a fee award "as part of the judgment." 15 U.S.C.A. § 2310(d)(2).  In addition, when these state fee-shifting statutes were enacted—1986 in the case of CPA and 1984 in the case of the AWEA—even under federal fee-shifting statutes, court-approved settlements were not required.  *See Buckhannon, supra,* 532 U.S. at 622, 121 S.Ct. 1835 (dissenting opinion of Justices Ginsburg, Stevens, Souter, and Breyer).  The most likely intent of the General Assembly in adopting the fee shifting provisions in AWEA and the CPA would have been to

---

5.  While the settlement agreement is not a court order, if a voluntary dismissal occurs pursuant to Md. Rule 2–506(b), the plaintiff's claim may be dismissed "only by order of court and upon such terms and conditions as the court deems proper."

incorporate the common, longstanding and uncomplicated Maryland practice for settling cases, *viz.* the reading into the court record of a valid enforceable settlement. This is particularly true in light of the State's policy, as reflected in the common law, of encouraging and promoting the settlement of litigation. *See Sysco, supra,* 162 Md.App. at 453, 875 A.2d 188.

Finally, we note that the conclusion we reach is consistent with the decision of the Arizona Court of Appeals in *Moedt, supra.* There, the court rejected the contention that direct judicial involvement was necessary for a plaintiff to be a prevailing party under the fee-shifting provisions of the Arizona lemon law.[6] *Moedt,* 60 P.3d. at 243. The Arizona court noted that its interpretation comported with the primary justification for fee-shifting provisions, "the promotion of settling disagreements without extensive litigation," as well as the goal of "strengthen[ing] a purchaser's ability to enforce the consumer-protection laws." *Id.*

For these reasons, we hold that even though the settlement did not receive express judicial approval, the procedure used was sufficiently indicative of prevailing party status and was not inconsistent with AWEA or the CPA.[7]

Turning from "how" to "what," we now consider whether appellee has in fact shown the requisite degree of success to be deemed a prevailing party. In *Blaylock, supra,* 152 Md. App. at 354–55, 831 A.2d 1120, this Court distilled these prevailing party formulas from cases in other jurisdictions:

(1) A party prevails when its ends are accomplished as a result of the litigation;

---

**6.** A helpful analysis of cases on state Lemon Law fee-shifting is found in *Annot.: Award of Attorney's Fees under State Motor Vehicle Warranty Legislation (Lemon Laws),* 82 A.L.R. 5th 501 (2000, 2008 supp.).

**7.** Although there was no express judicial approval of the settlement, the court clearly acquiesced in the arrangement and the judge appeared to voice his personal approval in his congratulatory remarks to the plaintiff. In addition, the settlement could not have been entered into the record without the court's permission.

(2) If a party reaches a sought-after destination, then the party prevails regardless of the route taken; and

(3) The standard is whether the party has prevailed in a practical sense.

Under these principles, appellee has prevailed.

The essential claim in this suit was that the 2005 Sonata appellee purchased was not in conformance with the manufacturer's warranties and that, therefore, appellee was entitled to damages to compensate her for the reduced value of the vehicle. In the settlement agreement, Hyundai agreed to swap the defective car with a brand-new 2007 model, worth significantly more than the 2005 model, then one year old and originally purchased new by appellee. Appellee actually secured more than she sought, a brand new car. Although she may not have taken the direct route to this substantial relief, without a doubt, she prevailed "in a practical sense." *Blaylock, supra,* 152 Md.App. at 355, 831 A.2d 1120.

## 2. Reasonableness of the Fee Award

■ Appellant contends 1) that appellee failed to present legally sufficient evidence of the reasonableness of the attorney's fees claimed, and 2) that the court erred by failing to properly apply the lodestar analysis in determining the amount of the fee award. These questions are two sides of the same coin, in that they relate to reasonableness of the fee and its computation.[8]

---

8. Appellant argues that appellee failed to supply the requisite evidence needed to meet her burden of proof for claims of attorney's fees, and, therefore, according to *Diamond Point Plaza v. Wells Fargo Bank, N.A.,* 400 Md. 718, 759–60, 929 A.2d 932 (2007), relief must be denied. Appellant also cites *B & P Enterprises. v. Overland Equip. Co.,* 133 Md.App. 583, 624, 758 A.2d 1026 (2000), which holds that the losing party is "entitled to have the amount of fees and expenses proven with the certainty and under the standards ordinarily applicable for proof of contractual damages." These cases can be readily distinguished from the present case, however, in that both *Diamond Point* and *B & P Enterprises* entitled the prevailing party to reasonable attorney's fees under the terms of the disputed contracts. In the case at bar, like the *Friolo* cases and *Blaylock,* the award of attorney's fees was not a

Appellee provided a four-page invoice, which included the dates various services were rendered, the initials of the person performing the task, a brief description of the service provided, the hours spent, the rate charged, and the amount charged. On its face, the invoice did not clearly specify which services were being performed by lawyers and non-lawyers. Appellee also submitted to the court the current and proposed federal court guidelines for determining attorney's fees, which lists the recommended hourly rates based upon the number of years the attorney has been admitted to the bar, in order to show that the rates charged by his law firm were in keeping with those guidelines. Additionally, at the hearing regarding appellee's motion for attorney's fees, her counsel said that appellee had filed her complaint alleging one federal and two state claims. He also asserted that, in preparation for trial, extensive discovery was undertaken, interrogatories and document production requests were filed, the appellee's and appellant's experts were deposed, pre-trial statements were prepared, and a settlement conference was held. Additionally, appellant had filed a motion for summary judgment and a hearing was held. After a year of litigation, during which no settlement seemed likely, appellee's counsel prepared for trial. It was not until the day of trial, after some preliminary arguments were heard, that a settlement was finally reached.

Appellee's counsel also stated that because he had more than fifteen years experience, his services were billed at the rate of $275 per hour, which was in keeping with the proposed federal guidelines on attorney's fees submitted into evidence as plaintiff's exhibit C. He stated that his company charged $90 per hour for paralegal services. He pointed out that he had litigated the case for a year and had attempted to settle the case six months prior to trial. He asserted that the amount sought was reasonable based upon the amount of time

bargained for condition of a contract between the parties; the right to seek an award was authorized by statute. In seeking the award of attorney's fees under fee-shifting statutes, however, the party seeking recovery must provide evidence supporting the hours worked and rates claimed.

invested. Appellee's counsel offered to submit the fee agreement between his firm and appellee, but it was not admitted into evidence. After hearing arguments from both parties and reviewing the appellee's billing invoice, the circuit court judge stated that the fees "appear to be reasonable" and awarded appellee $12,311.40 in attorney's fees.

Although nearly indecipherable without counsel's explanation, appellee's invoice provided at least some evidence of a reasonable fee. However, there were some major flaws in the submission. Both the AWEA and the CPA authorize the award of reasonable "attorney's" fees. According to *Friolo I*, 373 Md. at 530, 819 A.2d 354, a state fee shifting statute allowing "counsel" fees "must exclude any fees of non-lawyers," including charges for paralegals.[9] Here, appellee sought and received payment for paralegals at the rate of $90 per hour. In addition, appellee tied the attorney's rate to federal court guidelines never adopted by a Maryland court. In *Friolo I*, the Court of Appeals noted that state courts are "not bound to any 'matrix' adopted by out-of-state courts or agencies, but must be guided by the nature of the case and the relevant issue it presents and by the rate or other fee arrangements common in the community for similar kinds of fees." 373 Md. at 530, 819 A.2d 354.

In determining an award under Maryland fee-shifting statutes, courts employ the lodestar methodology.[10] This begins by multiplying the reasonable number of hours expended by an attorney by a reasonable hourly rate. *Id.* at 504–05, 819 A.2d 354. In *Friolo I*, however, the Court of Appeals cautioned that the lodestar methodology was broader than simply a multiplication of reasonable hours spent by a reasonable hourly rate, but required a careful consideration by the trial court of appropriate adjustments that should be made on

**9.** The *Friolo I* Court said that "[c]harges for paralegals and legal interns are subsumed within the attorney's fees." 373 Md. at 530, 819 A.2d 354.

**10.** The term "lodestar" means guiding ideal or a model for imitation. Webster's Unabridged Dictionary 1062 (2d ed. 1979).

a case-by-case basis. *Friolo I,* 373 Md. at 504–05, 819 A.2d 354. "Hours that [a]re excessive, redundant, or otherwise unnecessary should be excluded, as hours not properly billed to one's client are also not properly billed to the adversary." *Id.* at 524, 819 A.2d 354. If charges for non-lawyers, such as paralegals, are claimed under a statute that does not authorize such fees, those amounts should be excluded. *See* p. 1265, 960 A.2d at p. 275, *supra; Friolo I,* 373 Md. at 530, 819 A.2d 354.

Maryland courts consider a variety of factors including, but not limited to, those delineated in Md. Rules of Professional Conduct, Rule 1.5. Those factors are:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

We find that the trial court did not make sufficient findings of fact with regard to these factors.

In order to determine whether any of the charges billed by appellee's counsel were reasonable, in addition to reviewing the information provided by appellee, the court would also need to apply the factors from Md. Rules of Professional Conduct Rule 1.5 and assess the level of skill of each staff person who performed services; whether time limitations were placed upon the firm by the client; the nature and length

of the professional relationship between the appellee and her counsel; whether the case was considered undesirable and/or required the attorney to work on this case to the exclusion of other cases; the amount of attorney's fee awarded in similar cases, what the fee arrangement was, and the novelty and difficulty of the case. Only after analyzing these additional issues can the trial court properly begin its reasonableness analysis. The analysis does not end there, however.

Once the trial court makes a determination as to the reasonableness of the fees, it must then weigh the fees requested by the result achieved and decide whether an upward or downward adjustment in the award is warranted. *Friolo I,* 373 Md. at 504, 819 A.2d 354. If the court determines that the appellee has obtained excellent results, his attorney should recover the full fee, which would normally encompass all hours reasonably expended on the case. *Id.* at 524–25, 819 A.2d 354. If the court finds that the appellee obtained exceptional success, even an enhanced award may be justified. *Id.* at 525, 819 A.2d 354. On the other hand, if the court determines that the appellee achieved only partial success, a downward adjustment may be necessary. *Garcia v. Foulger Pratt Dev., Inc.,* 155 Md.App. 634, 673–74, 845 A.2d 16 (2003)(noting, however, that if the lawsuit consisted of related claims, a plaintiff who has achieved substantial results should not have his attorney's fees reduced simply because the court did not adopt each contention raised).

According to *Friolo v. Frankel,* 403 Md. 443, 450, 942 A.2d 1242 (2008), the trial court is required to explain how the lodestar factors affected its decision to award attorney's fees. Because the record in this case is incomplete with regard to the analysis undertaken by the court, we cannot determine whether the court abused its discretion regarding the amount of attorney's fees awarded. We, therefore, remand the case for further proceedings, at which the trial court should follow the lodestar methodology as outlined above, and explain how those factors justify the award of attorney's fees.

JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY WITH RESPECT TO ATTORNEY'S FEES VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS IN CONFORMANCE WITH THIS OPINION. JUDGMENT AFFIRMED IN ALL OTHER RESPECTS. COSTS DIVIDED EQUALLY BETWEEN THE PARTIES.