27 A.3d 583

**Anthony M. FRAZIER,**

v.

**CASTLE FORD, LTD. f/k/a Crystal Ford Isuzu, Ltd.**

**No. 1767, Sept. Term, 2008.**

Court of Special Appeals of Maryland.

Aug. 31, 2011.

Leslie L. Gladstone, Baltimore, MD, for appellant.

Jonathan E. May (Douglas W. Biser, on the brief), Towson, MD, for appellee.

Panel: WOODWARD, MATRICCIANI, RAYMOND, G. THIEME, JR. (Retired, Specially Assigned), JJ.

WOODWARD, J.

On July 27, 2007, appellant and cross-appellee, Anthony M. Frazier, filed a class action suit in the Circuit Court for Montgomery County alleging that appellee and cross-appellant, Castle Ford, Ltd. f/k/a Crystal Ford Isuzu, Ltd. ("Crystal Ford")[1], fraudulently misrepresented the start and end dates of certain extended automobile warranties sold by Crystal Ford. Crystal Ford filed a motion to deny class action certification and a motion for summary judgment on November 13, 2007, and Frazier filed a motion to compel discovery on November 26, 2007. After a hearing on the parties' motions on February 7, 2008, the circuit court (Bernard, J.) rendered an oral opinion on February 20, 2008, in which the court denied Frazier's motion to compel discovery, granted Crystal

---

1. Appellee and cross-appellant is currently known as Castle Ford, Ltd. In the pleadings and arguments before the circuit court, however, appellee and cross-appellant was referred to as Crystal Ford, Ltd. For the sake of clarity and consistency, we will continue to refer to appellee and cross-appellant as Crystal Ford.

Ford's motion to deny class action certification, and granted in part Crystal Ford's motion for summary judgment, leaving outstanding Frazier's request for attorney's fees. By order dated September 15, 2008, the circuit court (Dugan, J.) awarded Frazier $20,950.52 in attorney's fees, which represented the fees incurred by Frazier for the entire litigation.

Frazier appeals from the February 20, 2008 orders of the circuit court and presents three questions for our review, which we have rephrased and reordered as follows:

I. Did the circuit court err in granting Crystal Ford's motion for summary judgment?

II. Did the circuit court err in granting Crystal Ford's motion to deny class action certification?

III. Did the circuit court abuse its discretion in denying Frazier's motion to compel discovery? [2]

Because we answer the first two questions in the negative, Frazier's third question is rendered moot.

Crystal Ford cross-appeals from the September 15, 2008 order of the circuit court and presents one question for our review, which we have slightly rephrased: Did the circuit court abuse its discretion in awarding Frazier the attorney's fees and costs incurred for the entire litigation? We answer this question in the negative.

Accordingly, we shall affirm the judgment of the circuit court.

---

**2.** In his brief, Frazier presented the following questions for review by this Court:

1. Did the Trial Court err in granting Crystal [Ford]'s Motion to Deny Class Certification:
A. On the basis that Frazier had been made whole and therefore was no longer a member of the class?; and/or
B. On the basis that there was no uniformity (typicality) in regards to what each individual claimant would have to put forth?
2. Did the Trial Court err in denying Frazier's Motion for Order Compelling Discovery?
3. Did the Trial Court err in granting Crystal [Ford]'s Motion for Summary Judgment thereby denying Frazier's request for punitive damages, injunctive relief and other damages?

## BACKGROUND

On December 23, 2004, Frazier came to Crystal Ford's dealership in Silver Spring, Maryland to purchase an extended warranty for his 2003 Ford Explorer. Frazier spoke with Tiana Robbins, a finance manager for Crystal Ford. In processing the sales transaction for a Ford Premium Care Extended Service Plan, Robbins received the relevant information from Frazier and entered it into Crystal Ford's computer. Robbins altered the computer generated form to reflect that the extended warranty coverage would expire on December 31, 2008, a duration of approximately four years, or at 100,000 miles. Robbins also informed Frazier that his extended warranty would be honored until December 31, 2008. Frazier signed the extended warranty contract, tendered a down payment, and financed the balance of the $1,700 purchase price.

In November of 2006, Frazier brought his Ford Explorer into another Ford dealership for warranty repairs. Frazier was notified, however, that his extended warranty had expired on October 30, 2006. Upon contacting Ford representatives for assistance, Frazier was advised that Crystal Ford provided an incorrect expiration date for his warranty coverage. Frazier then discussed the matter with Robbins, who informed him that the discrepancy was a result of improperly calculating the duration of the extended warranty. Robbins stated that the four year warranty coverage period did not begin on the purchase date of December 23, 2004, but related back to the "build date" of Frazier's Explorer, which was October 30, 2002. Robbins told Frazier that his only option was to purchase a new extended warranty, which he declined to do. As a result, Frazier had to pay $552.99 out of his own pocket for the warranty repairs.

When Frazier's attempts to have Crystal Ford honor the warranty contract proved unsuccessful, he retained counsel. On July 13, 2007, Frazier's attorney wrote a certified letter to Crystal Ford seeking compensation for the repairs covered by the warranty as represented by Robbins. When his demand

went unanswered, Frazier filed a class action suit on July 27, 2007, alleging that Crystal Ford's misrepresentation of the coverage period, which Frazier claimed was made to "several hundreds" of other purchasers of similar extended warranties, constituted a deceptive trade practice under the Consumer Protection Act and fraud. Frazier sought compensatory damages, punitive damages, attorney's fees, and declaratory and injunctive relief for himself and members of the putative class. In August 2007, Crystal Ford paid to extend Frazier's warranty to the originally specified date of December 31, 2008, and the Ford warranty company issued a check for the warranty repairs to Frazier's Explorer, less a $100 deductible. On October 18, 2007, counsel for Crystal Ford sent a letter to Frazier's attorney confirming the warranty extension and reimbursement of Frazier's payment for the warranty repairs.

On November 13, 2007, Crystal Ford filed a motion to deny class action certification and a motion for summary judgment. Meanwhile, Frazier filed a motion seeking discovery of, among other things, Crystal Ford's past lawsuits, Crystal Ford's income, and information on all previous extended warranties sold by Crystal Ford, including the names of the purchasers of these warranties.

On February 7, 2008, the circuit court held a hearing on Frazier's and Crystal Ford's motions, the Honorable Marielsa Bernard presiding. Frazier conceded that Crystal Ford gave him the relief requested in his complaint, with the exception of attorney's fees, by extending the warranty through December 31, 2008, and securing reimbursement for the warranty repairs, but argued that additional discovery was necessary to show that Crystal Ford consistently misstated the start and end dates of the warranty coverage to numerous other customers, as well as to support an award of punitive damages. Frazier maintained that (1) the alleged fraud Crystal Ford perpetuated on purchasers of extended warranties presented common issues of reliance and damages appropriate for class action treatment; (2) any motion to deny such certification would be premature; and (3) Crystal Ford was attempting to

prevent class action certification by satisfying Frazier's individual claims.

Crystal Ford recognized that Robbins incorrectly determined the duration of the extended warranties, but stated that it had begun to remedy the problem by rewriting the warranty contracts with Ford to conform with the warranty start date inserted into its customers' contracts.[3] At the conclusion of the hearing, the court held the parties' motions *sub curia.*

On February 20, 2008, the circuit court, in an oral opinion, granted Crystal Ford's motion to deny class action certification on the grounds that, because Frazier had been made whole by the extension of the warranty and reimbursement of the warranty repairs, he no longer had an interest to act on behalf of a class. As a result, Frazier's motion to compel discovery was denied. Lastly, because Frazier received the relief he requested, the circuit court determined that Frazier's suit was moot and thus Crystal Ford was entitled to summary judgment on all issues except the issue of attorney's fees.

On September 3, 2008, a hearing to decide Frazier's request for attorney's fees was held before the Honorable Joseph Dugan, Jr. Frazier argued that he was entitled to the entirety of his legal fees due to the results achieved by the efforts of his counsel: Frazier received the relief he sought and Crystal Ford remedied the warranty contracts of similarly situated customers. Crystal Ford countered that, if the court decided an award of attorney's fees was appropriate, it should be limited to only the amount necessary to secure Frazier's relief, and not for any additional fees incurred on behalf of a denied class. After hearing argument, the trial court applied the factors discussed in this Court's opinion in *Blaylock v. Johns Hopkins Federal Credit Union,* 152 Md.App. 338, 831 A.2d 1120 (2003), and awarded $20,950.52 in counsel fees, which was

---

**3.** Counsel for Crystal Ford represented that at the time of the hearing, Crystal Ford had reformed half of the defective warranties, and would rectify the remaining ones within a week. Crystal Ford stated in its brief to this Court that this process had since been completed and communicated the same to Frazier's counsel.

the entire amount sought by Frazier. On September 15, 2008, the court signed a written order consistent with the court's decision.

Timely notices of appeal and cross appeal were filed. Additional facts will be set forth below as necessary to resolve the questions presented.

## DISCUSSION

### I.

### Did the circuit court err in granting Crystal Ford's motion for summary judgment?

Frazier argues that the circuit court improperly based its grant of Crystal Ford's motion for summary judgment on the ground that Frazier was not entitled as a matter of law to injunctive relief and punitive damages. Specifically, Frazier contends that his claim for injunctive relief was not rendered moot by Crystal Ford's extension of Frazier's warranty and reimbursement of his payment for warranty repairs. According to Frazier, there was also a dispute of material fact regarding whether Robbins' conduct constituted "knowing and deliberate wrongdoing," which would support an award of punitive damages. (Quotations omitted).

Crystal Ford responds that the circuit court correctly held that it was entitled to summary judgment, because Frazier could not prove any injury. Specifically, Crystal Ford argues that in order to recover on a claim of fraud or deceptive trade practice, a plaintiff must prove actual injury or loss. Crystal Ford claims that the alleged injury that Frazier sustained was rectified when Frazier was reimbursed for the warranty repairs and his warranty coverage was extended to December 31, 2008. Thus, according to Crystal Ford, Frazier cannot prove an essential element of his individual claims—actual injury. Moreover, Crystal Ford argues that Frazier's claims for punitive damages and injunctive relief are "irrelevant," because as measures of damages they cannot be recovered

unless the predicate to recovery—actual injury—has been proven.

Crystal Ford also contends that there is insufficient evidence in the record to create a genuine dispute of material fact regarding the existence of actual malice, which is necessary to support an award of punitive damages. In particular, Crystal Ford contends that there are no allegations, or factual support, that Robbins "acted maliciously or with any ill-will or intent to injure Frazier." Finally, Crystal Ford maintains that the circuit court properly granted its motion for summary judgment as to Frazier's claim for injunctive relief, because there was no injunctive relief that the court could award to make Frazier whole.

## Standard of Review

Maryland Rule 2–501(a) provides that a party "may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law." A trial court's grant of a motion for summary judgment is reviewed *de novo*. *Dashiell v. Meeks*, 396 Md. 149, 163, 913 A.2d 10 (2006). "[T]he standard of review for a grant of summary judgment is whether the trial court was legally correct." *LaSalle Bank, N.A. v. Reeves*, 173 Md.App. 392, 401, 919 A.2d 738 (quotations omitted), *cert. denied*, 400 Md. 649, 929 A.2d 891 (2007). We must determine "first, whether a material fact was placed in genuine dispute, thus requiring a trial, and, second, if trial by a fact-finder is not required, whether the Circuit Court was legally correct in granting summary judgment." *Haas v. Lockheed Martin Corp.*, 396 Md. 469, 478, 914 A.2d 735 (2007).

## Analysis

■ In granting Crystal Ford's motion for summary judgment, the circuit court stated that it was undisputed that Frazier received from Crystal Ford the relief he sought by filing suit, to wit, the extension of his warranty and reimbursement for warranty repairs. The court, however, held the case

open for the sole issue of determining appropriate attorney's fees.

First, we agree with the circuit court that there was no dispute of material fact regarding the relief received by Frazier from Crystal Ford. In an affidavit included with Crystal Ford's motion for summary judgment, the president of Crystal Ford stated that Robbins incorrectly determined the start and end time of Frazier's extended warranty, that Crystal Ford had since extended Frazier's warranty to the represented expiration date of December 31, 2008, and that it had arranged for payment of the warranty repairs Frazier incurred, less the $100 deductible. At the motions hearing, the following colloquy occurred between the trial court and Frazier's counsel:

THE COURT: Actually, let me, let me go to something else that I was wondering—

[FRAZIER'S COUNSEL]: Yes.

THE COURT:—without even addressing the motion to deny the class certification.

What damages is your client alleging at the present time? Because my understanding is that he has been, everything that he asked for in the complaint, other than attorneys fees, have been addressed, because he received his extended warranty, the repair bill that he had incurred when he didn't have the extended warranty coverage was paid, minus the $100 deductible.

[FRAZIER' S COUNSEL]: Yes.

Thus the court correctly determined that Frazier received all of the relief that he requested for the actual injury that he suffered.

 Frazier challenges the court's ruling that punitive damages were unavailable as a matter of law. Frazier's argument, however, is misguided. It is clear that under Maryland law, a litigant cannot recover punitive damages without an award of compensatory damages. The Court of Appeals has explained that "[t]here are two threshold conditions that parties must meet before being entitled to receive

an award of punitive damages. The first condition is that there be a compensatory damages award underlying an award of punitive damages." *Caldor, Inc. v. Bowden*, 330 Md. 632, 661, 625 A.2d 959 (1993) (citations omitted); *accord Philip Morris, Inc. v. Angeletti*, 358 Md. 689, 773, 752 A.2d 200 (2000) ("[A] jury must find compensatory damages as a foundation before it may award punitive damages."); *Shabazz v. Bob Evans Farms, Inc.*, 163 Md.App. 602, 639, 881 A.2d 1212 ("[A] necessary condition for the recovery of punitive damages is an underlying award of compensatory damages."), *cert. denied*, 390 Md. 92, 887 A.2d 656 (2005). Furthermore, nominal damages are not available in an action for fraud, *see Schwartz-beck v. Loving Chevrolet*, 27 Md.App. 139, 145–46, 339 A.2d 700 (1975), or for a deceptive trade practice under the Consumer Protection Act, *see Lloyd v. GMC*, 397 Md. 108, 143, 916 A.2d 257 (2007) (stating that "a private party suing under the Consumer Protection Act must establish 'actual injury or loss.'"). Therefore, an award of compensatory damages for an actual injury or loss is a condition precedent to receiving punitive damages in claims for fraud and deceptive trade practice.

As previously stated, it is undisputed that Crystal Ford provided all of the compensatory relief that Frazier requested in his complaint on his individual, as opposed to his class action, claims. The warranty coverage was extended through December 31, 2008, and Frazier was reimbursed the cost of the warranty repairs. The circuit court repeatedly stated that Frazier had "been made whole." As a result, there were no further compensatory damages that Frazier could recover at a trial in the instant case. Therefore, punitive damages were not available to Frazier as a matter of law. Accordingly, Frazier's claim for punitive damages could not prevent the entry of summary judgment in favor of Crystal Ford.

Frazier also contends that the circuit court erred in ruling that he was not entitled to injunctive relief as a matter of law. Specifically, Frazier contends that injunctive relief was necessary for oversight over Crystal Ford's reformation of extended warranty contracts "provided to *other customers* defrauded in

similar fashion to Frazier." (Emphasis added). Frazier's argument, however, goes to his class action suit, and thus is irrelevant to his request for injunctive relief on his individual claims.

■ "Injunctive relief is a preventative and protective remedy, aimed at future acts, and is not intended to redress past wrongs." *Eastside Vend Distribs., Inc. v. Pepsi Bottling Grp., Inc.,* 396 Md. 219, 240, 913 A.2d 50 (2006) (quotations and emphasis omitted). As a result of Crystal Ford's extending Frazier's warranty and securing repayment of his warranty repairs, there was no injunctive relief that the court could have possibly fashioned for Frazier's individual claims. *See Carroll Cnty. Ethics Comm'n v. Lennon,* 119 Md.App. 49, 58, 703 A.2d 1338 (1998) (citing case law for the proposition that "a resolution between the parties may moot [a] claim for injunctive relief"). Therefore, the circuit court properly granted Crystal Ford's motion for summary judgment.

## II.

### Did the circuit court err in granting Crystal Ford's motion to deny class certification?

Frazier argues that the circuit court improperly granted Crystal Ford's motion to deny class certification. According to Frazier, the court incorrectly determined that Crystal Ford's tendering of the relief requested in the complaint required denial of class certification. Frazier claims that Crystal Ford's warranty extension and reimbursement represented an attempt to elude litigating a class action suit by satisfying only the class representative's claims. Additionally, Frazier contends that the court erroneously concluded that class action certification was inappropriate due to a lack of uniformity. Frazier maintains that Crystal Ford perpetuated the same fraud on other customers.

Crystal Ford responds that the court correctly granted its motion to deny class action certification, because Frazier's claim was moot. According to Crystal Ford, a majority of courts have held that the tender of payment or settlement of a

class representative's claim before certification requires dismissal of the entire suit because there is no remaining controversy to adjudicate. Crystal Ford notes that the Court of Appeals recognized this principle in *Creveling v. Government Employees Insurance Co.*, 376 Md. 72, 83 n. 3, 828 A.2d 229 (2003), despite not having considered this exact issue. Crystal Ford argues that Frazier would have been shielded from dismissal on mootness grounds if he had filed a motion to certify the class prior to receiving the relief requested. Crystal Ford concludes that the circuit court was required to dismiss the suit because Frazier received the relief he requested in the complaint and never moved for class action certification.[4]

## Standard of Review

The Court of Appeals has recently restated the standard of review regarding class action certification:

> We ordinarily review a [Circuit Court's] decision regarding whether to certify a class action for an abuse of discretion. [T]he basis of the certification inquiry is essentially a factual one, and thus, deference is due. Our standard of review for determining whether a Circuit Court used a correct legal standard in determining whether to grant or deny class certification is *de novo.*

*Anne Arundel Cnty., Md. v. Halle Dev., Inc.*, 408 Md. 539, 569, 971 A.2d 214 (2009) (alteration in original) (citations and quotations omitted).

## Analysis

Maryland Rule 2–231(c), which governs certification in class action lawsuits, states in relevant part: "On motion of any party ..., the court shall determine by order as soon as

---

4. Alternatively, Crystal Ford contends that the circuit court did not abuse its discretion in granting its motion because the potential claims lacked the requisite typicality, commonality, and numerosity required by Maryland Rule 2–231 for class certification. In light of our decision, stated *infra*, that class certification was inappropriate on the ground of mootness, we need not address this argument.

practicable after commencement of the action whether it is to be maintained as a class action." In the case *sub judice*, Crystal Ford satisfied Frazier's individual claims in August 2007 and then filed a motion to deny class action certification on November 13, 2007. In granting Crystal Ford's motion to deny class action certification, the circuit court noted the following:

[L]et me address the motion to deny class certification.

[Frazier] clearly is no longer a member of any class because he's been made whole, so really, he has no interest as far as this Court can see to put forward, and to indicate that he is acting on behalf of a class.

Although Maryland courts have not directly addressed the issue before us, the Court of Appeals observed in a footnote in *Creveling* that, "when named plaintiffs' individual claims are satisfied following the filing of a class action complaint but before the filing of a Motion for Class Certification, many courts conclude that the entire action should be dismissed." 376 Md. at 84 n. 3, 828 A.2d 229. On the other hand, according to the Court, "[s]ome courts conclude that the filing of a class action complaint invokes the interests of potential class members that remain live despite the mootness of a named plaintiff's claim." *Id.* The Court then identified a third line of cases where "defendants tender relief to named plaintiffs while a Motion for Class Certification is pending before the trial court." *Id.* at 85 n. 3, 828 A.2d 229. In those cases, the general rule is that the mootness of the individual claim requires dismissal of the entire action, unless "a tender comes while plaintiffs diligently pursue a pending motion for class certification." *Id.*

In our view, the better reasoned cases support the principle that, if the individual claims of the named plaintiffs are satisfied by settlement or tender of full payment after the filing of the complaint but before the filing of a motion for class certification, the entire action must be dismissed as moot. For example, in the recent case of *Barber v. American Airlines, Inc.*, 241 Ill.2d 450, 350 Ill.Dec. 535, 948 N.E.2d 1042 (2011), the plaintiff purchased a ticket on the defendant's

flight from Chicago to White Plains, New York. *Id.* 350 Ill.Dec. 535, 948 N.E.2d at 1043. Prior to boarding, the plaintiff checked two suitcases and paid a $40 baggage fee. *Id.* Later, when the flight was canceled by the defendant, the plaintiff elected not to take another flight and requested a refund of the ticket price and the $40 baggage fee. *Id.* The defendant refunded the ticket price, but allegedly refused to refund the baggage fee. *Id.*

Four days after the cancellation of the flight, the plaintiff filed suit against the defendant, in which she sought recovery of the baggage fee for breach of contract, and recovery in a class action on behalf of similarly situated persons. *Id.* Two weeks after being served with the complaint, the defendant offered to refund the $40 fee. *Id.* When the plaintiff declined the offer, the defendant refunded the $40 fee to the plaintiff's credit card, which was the original form of payment. *Id.* The defendant then filed a motion to dismiss the complaint on the grounds, *inter alia,* that the plaintiff's complaint was moot. *Id.* 350 Ill.Dec. 535, 948 N.E.2d at 1044. The trial court agreed and dismissed the complaint. *Id.* The Appellate Court of Illinois, First District, however, reversed. *Id.*

On appeal, the Supreme Court of Illinois sided with the trial court. *Id.* 350 Ill.Dec. 535, 948 N.E.2d at 1046. Relying on its earlier decision in *Wheatley v. Board of Education,* 99 Ill.2d 481, 77 Ill.Dec. 115, 459 N.E.2d 1364 (1984), the Court stated that "the important consideration in determining whether a named representative's claim is moot is whether that representative filed a motion for class certification prior to the time when the defendant made its tender." *Id.* 350 Ill.Dec. 535, 948 N.E.2d at 1045. The Court explained:

Where the named representative has [filed a motion for class certification] and the motion is thus pending at the time the tender is made, the case is not moot, and the circuit court should hear and decide the motion for class certification before deciding whether the case is mooted by the tender. The reason is that a motion for class certification, while pending, sufficiently brings the interests of the other class members before the court so that the apparent

conflict between their interests and those of the defendant will avoid a mootness artificially created by the defendant by making the named plaintiff whole.

*Id.* (citations and quotations omitted).

The situation is different, according to the Court, "where the tender is made *before* the filing of a motion for class certification. There, the interests of the other class members are not before the court, and the case may properly be dismissed." *Id.* 350 Ill.Dec. 535, 948 N.E.2d at 1046 (emphasis in original) (citations omitted). Accordingly, because at the time the defendant in *Barber* tendered the baggage refund to the plaintiff no motion for class certification was pending,[5] the Court concluded that the plaintiff's claim was moot, and the trial court correctly dismissed the case. *Id.*

The Supreme Court of Illinois also rejected the plaintiff's contention that it was against public policy to allow a defendant to prevent class action litigation by "picking off" the named plaintiff before there was an opportunity to protect the interests of the absent class members by moving for certification. *Id.* 350 Ill.Dec. 535, 948 N.E.2d at 1047. The Court observed that under Illinois law there was no prohibition against settlements with class members "as long as the rights of nonsettling class members are not affected." *Id.* The Court concluded:

There is no indication here that defendant's refund to plaintiff affected the rights of others who did not receive similar refunds. Presumably, the remaining class members can either pursue class litigation or bring their claims individually. Indeed, this class action could have survived if one of the remaining class members had substituted himself as the named representative.

*Id.*

 We find the rationale of *Barber* to be persuasive. Like the plaintiff in *Barber,* Frazier's individual claims were satis-

---

**5.** Indeed, the Court observed that the plaintiff never filed a motion for class certification. *Barber v. Am. Airlines, Inc.,* 241 Ill.2d 450, 350 Ill.Dec. 535, 948 N.E.2d 1042, 1046 (2011).

fied before he ever moved for class certification. Indeed, like the plaintiff in *Barber*, Frazier never filed a motion for class certification. Thus Frazier's individual claims became moot before the interests of the absent class members were brought before the court by the filing of a motion for class certification. Accordingly, Frazier's entire action was moot, and Judge Bernard did not err in granting Crystal Ford's motion to deny class certification.

Frazier's reliance on *Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir.1978), *aff'd sub nom. Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) is misplaced. In *Roper*, two credit card holders brought a class action suit alleging that the issuing bank was charging usurious rates. *Id.* at 1109. After the trial court denied class action certification, the bank made an offer of judgment to the two class representatives and deposited the maximum possible recovery amount with the court registry. *Id.* The two class action representatives never accepted the bank's offer. *Id.* The trial court entered judgment based on the bank's offer over the objection of the class representatives. *Id.* Although the Court of Appeals for the Fifth Circuit noted that "prior to certification a class action cannot be dismissed merely because the representatives are satisfied," the issue before that Court was whether the two class representatives could appeal the trial court's denial of their motion for class action certification. *Id.* at 1110; *see also Roper*, 445 U.S. at 329, 100 S.Ct. 1166. The Court of Appeals for the Fifth Circuit held that the representatives could appeal, and the Supreme Court affirmed. *Roper*, 578 F.2d at 1110–11 ("[T]h[e] satisfaction of their claims could not preclude them from appealing the denial of certification...."); *Roper*, 445 U.S. at 340, 100 S.Ct. 1166.

The situation in *Roper* is materially distinct from the matter *sub judice*. First, the class representatives in *Roper* moved for class action, whereas Frazier never filed such a motion. *See also DeCoteau v. Nodak Mut. Ins. Co.*, 636 N.W.2d 432, 437 (N.D.2001) (distinguishing that case from *Roper* because the appellant "ha[d] never moved to certify a class since commencing this action"). Additionally, in *Roper*, the bank

offered the maximum possible recovery to the class represen-
tatives on their individual claims after the motion for class
certification had been denied. 578 F.2d at 1109; *Roper,* 445
U.S. at 329–330, 100 S.Ct. 1166. These factual distinctions are
critical to our analysis, because the Supreme Court held in
*Roper* that the case was not moot for appellate review pur-
poses where a tender to a named plaintiff occurs after the
motion for class certification is denied, and where appellate
review of that denial is being sought. 445 U.S. at 332–33, 100
S.Ct. 1166. In *Brunet v. City of Columbus,* 1 F.3d 390, 400
(6th Cir.1993), the Court of Appeals for the Sixth Circuit
stated that the *Roper* decision applies only "in the limited
context of the attempt to moot a class representative's claims,
after certification is denied, that operates to prevent appellate
review of the denial of that certification." (Emphasis omit-
ted). Here, by contrast, Frazier's individual claims became
moot by the tender of full relief without any attempt by
Frazier to bring the interests of a putative class before the
court by filing a motion for class certification, much less
obtaining a court ruling on such motion. *Roper* is therefore
inapposite to the case *sub judice.*

## III.

### Did the circuit court abuse its discretion in denying Frazier's motion to compel discovery?

Frazier asserts that the circuit court abused its discretion
by denying his motion to compel discovery. In particular,
Frazier claims that the additional discovery sought by him
related to his class action claim, as well as to the existence of
actual malice for punitive damages on his individual claims.[6]
We see no merit in this argument.

Crystal Ford filed a motion to deny class action certification
soon after Frazier's individual claims were satisfied. Rule 2–

---

**6.** Frazier also sought additional discovery for injunctive relief in rela-
tion to his individual claims. As stated earlier in this opinion, injunc-
tive relief is available, if at all, on Frazier's class action claim, not on
his individual claims.

231(c) provides that upon the motion of a party, the trial court shall rule on the issue of class certification "as soon as practicable." Frazier does not claim, in his brief to this Court, that the lack of the discovery sought in his motion prevented him from filing a motion for class certification. Moreover, additional discovery on the class action claim would not have changed the fact that Frazier's individual claims had been satisfied. Regarding punitive damages, we previously stated that such damages are not available in the absence of compensatory damages, regardless of the presence of actual malice. *Caldor*, 330 Md. at 661, 625 A.2d 959. Accordingly, Judge Bernard did not abuse her discretion by denying Frazier's motion to compel discovery.

## IV.

### Did the circuit court abuse its discretion in awarding Frazier the amount of counsel fees and costs sought for the entire litigation?

On cross appeal, Crystal Ford argues that the circuit court abused its discretion when it awarded Frazier $20,950.52 in attorney's fees, which was the entire amount sought by Frazier. According to Crystal Ford, Frazier is only entitled to the fair and reasonable fees that were necessary to obtain relief for his individual claims. Crystal Ford contends that the trial court erred by compensating Frazier for counsel fees incurred for lawyering related to the class action certification, motion to compel discovery, and the requests for injunctive relief and punitive damages, all of which (1) were litigated after Frazier was reimbursed for his damages, and (2) were properly denied. According to Crystal Ford, Frazier is entitled to $3,204 at a maximum, which is the amount of Frazier's attorney's fees attributable to securing relief on Frazier's individual claims. Crystal Ford concludes by stating that it was an abuse of discretion for the court to assess attorney's fees that were devoted to achieving results for a "putative class that never existed."

Frazier responds that there was no abuse of discretion because the court carefully considered the factors set forth in *Blaylock*, 152 Md.App. 338, 831 A.2d 1120, in reaching its award of attorney's fees, including examining the results achieved by Frazier's counsel's legal services. According to Frazier, the court specifically considered and rejected Crystal Ford's claim of excessive lawyering.

In its reply brief, Crystal Ford asserts that Frazier's counsel should be compensated only for making Frazier whole, and not for arguing unsuccessful motions that did not result in any relief for Frazier.[7]

### Standard of Review

We have stated that "the trial judge has a large measure of discretion in determining the reasonableness of an attorney fee award." *Blaylock*, 152 Md.App. at 361, 831 A.2d 1120. Appellate courts examine an award of attorney's fees under an abuse of discretion standard. *Hyundai Motor Am. v. Alley*, 183 Md.App. 261, 277, 960 A.2d 1257 (2008). "[T]he exercise of [ ] discretion is presumed to be correct until the attacking party has overcome such presumption by clear and convincing proof of an abuse." *Armstrong v. Mayor and City Council of Baltimore*, 409 Md. 648, 687, 976 A.2d 349 (2009) (quotation omitted). As a result, "the amount of an attorney fee award is subject to reversal [only] if the judgment is clearly wrong or arbitrary." *Blaylock*, 152 Md.App. at 361, 831 A.2d 1120.

### Analysis

Under Maryland Code (1975, 2005 Repl.Vol.), § 13–408(b) of the Commercial Law Article, an individual who brings an action for deceptive trade practice under the Consumer Protection Act "and who is awarded damages may also

---

7. Crystal Ford also argues that the court improperly awarded Frazier paralegal costs. This contention, however, was never raised before the circuit court, and Crystal Ford did not raise the argument until its reply brief. Under Maryland Rules 8–131(a) and 8–504(a)(5), we decline to address this specific contention.

seek, and the court may award, reasonable attorney's fees."
We have stated that the following factors should be applied by
the trial judge when determining an attorney fee award:

> (1) the time and labor required, the novelty and difficulty of
> the questions involved, and the skill requisite to perform the
> legal service properly; (2) the likelihood, if apparent to the
> client, that the acceptance of the particular employment will
> preclude other employment by the lawyer; (3) the fee
> customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained; (5) the
> time limitations imposed by the client or by the circum-
> stances; (6) the nature and length of the professional rela-
> tionship with the client; (7) the experience, reputation, and
> ability of the lawyer or lawyers performing the services;
> and (8) whether the fee is fixed or contingent.

*Blaylock,* 152 Md.App. at 361, 831 A.2d 1120.

In its summary judgment ruling, the circuit court granted
Crystal Ford's motion, in part, determining that Frazier was
entitled to attorney's fees. At the subsequent hearing, the
court heard argument, applied the *Blaylock* factors, and
awarded $20,950.52 in attorney's fees. After considering the
relevant criteria that govern an award of attorney's fees, we
hold that the court did not abuse its discretion in granting
Frazier the attorney's fees incurred for the entire litigation.

Critical to the trial court's decision, and central to the
instant controversy, was the nature of the results achieved by
Frazier's counsel. Crystal Ford argued before the circuit
court, as it does on appeal, that any award must be limited to
the resources spent on achieving relief for Frazier alone,
which was realized when Crystal Ford extended the warranty
through December 31, 2008, and secured reimbursement for
the warranty repairs, and should not compensate Frazier's
counsel for unsuccessfully litigating the class action suit. Fra-
zier similarly restates his argument before the circuit court
that his suit resulted in not only securing satisfaction for
Frazier, but caused Crystal Ford to change its practices and

modify other extended warranties that suffered from the same defect.

The circuit court decided to take the broader view in ruling that Frazier's litigation achieved benefits for both Frazier and similarly situated customers. In his oral opinion, Judge Dugan said:

"The amount involved and the results obtained." Now, results were obtained in this case even though [Frazier's counsel] was unsuccessful. Results were obtained that are important to the consumers in this case.

Number one, the dealership, and Ms. Robbins in particular, who had been improperly selling these policies of extended warranty, stopped. At least, that's the representation that was made.

\* \* \*

Now the amount involved for Mr. Frazier was not a lot. But that amount could have been rectified long before September, long before this class action suit was filed. And there's also the fact that this Court considers; that is, whoa, what's over there on the horizon with respect to this class action suit if [Frazier's counsel] is successful in going forward and getting this certified as a class action? That, in and of itself, helped get the results for his client. Maybe they wouldn't have had those results.

Certainly, the threat of legal action just on behalf of Mr. Frazier didn't scare them. They're saying at 300 bucks an hour, what person's going to pay [Frazier's counsel] to file a lawsuit on their behalf to get, you know, 300, a 400–and–some–odd–dollar repair paid, and ... $800, $850 for half of an extended warranty back?

It doesn't take long, filing a lawsuit, for [Frazier's counsel] to get way, way, way out of whack. And most people are going to say, "That's not worth it to me. I'm not going to do that."

So now, all of a sudden, [Frazier's counsel] brings in a class action suit. Whoa. Now, Ford sits up and pays attention, or Crystal Ford sits up and pays attention. And

the results obtained are obtained for him in September. But there's also the result obtained in this case for ongoing people that come in. Now, they're not spending their money using an inappropriate date for an extended warranty.

\* \* \*

I believe that this, although counsel was unsuccessful with respect to his memoranda, and his motion, and his attempt to get additional discovery in this case, I do believe he obtained some results for his client, as well as for members of the public just to stop this practice in and of itself.

And I think that if I were to restrict the fee award to the $3,000, or whatever it was—and again, counsel doesn't even concede that that is necessarily just cause for awarding that—I don't think that I would be, being fair, I don't think it would be fair to [Frazier's counsel], in light of the actions in this case, and in light of the results that were obtained.

And as I say, I don't think one can underestimate in this case the effect that this filing of a class action had on what happened with respect to Crystal Ford now, now changing their policy, which they had not apparently changed prior to this action being filed, and making attempts to rectify the situation that had gone on in the past, as well as in the future, so as to avoid being dragged into a class action suit.

The circuit court thus connected the results of filing and prosecuting the class action suit with not just receipt of relief on Frazier's individual claims, but also with Crystal Ford's reformation of faulty existing warranties and the prevention of improper future warranties. Therefore, Judge Dugan determined that Frazier was entitled to an award of attorney's fees that compensated him for the complete fruits of his counsel's labor, which extended beyond obtaining full relief on Frazier's individual claims.

Crystal Ford maintains that the results achieved must be limited to Frazier's individual claims, and not encompass any benefits that trickled down to the members of a class that the trial court refused to certify. Although the court recognized

that Frazier's class action claim was legally unsuccessful, the filing and prosecution of such claim had the practical effect of remedying not only Frazier's individual claims, but also warranty holders like Frazier and future purchasers of extended warranties like the one purchased by Frazier. Crystal Ford has not provided any authority that requires the trial court to ignore the practical results obtained by litigation, nor have we found any such authority. We therefore hold that it was not an abuse of discretion for Judge Dugan to consider the ramifications of an unsuccessful class action suit, as well as the relief obtained on a plaintiff's individual claims, and to rule that Frazier was entitled to recovery of the counsel fees incurred in the entire litigation.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED; 2/3 OF COSTS TO BE PAID BY APPELLANT; 1/3 OF COSTS TO BE PAID BY APPELLEE.**